MILAGROS DIAZ *vs*. ELI LILLY AND COMPANY.

Middlesex.    April 5, 1973 — October 10, 1973.

TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Husband and Wife,* Consortium. *Actionable Tort. Negligence,* Causing loss of consortium. *Stare Decisis. Practice, Civil,* Parties.

History and analysis of the right to recover for loss of consortium. [154-165]

Either spouse has a claim against a third party for loss of consortium arising from personal injury of the other spouse caused by the negligence of the third party; overruling *Lombardo* v. *D. F. Frangioso & Co. Inc.* 359 Mass. 529. [167-168]

This court, in holding that either spouse has a claim against a third party for loss of consortium arising from personal injury of the other spouse caused by negligence of the third party, declared that where the claim for personal injury of the other spouse had been concluded no action thereafter instituted for loss of consortium arising from the same incident would be allowed. [167]

TORT. Writ in the Superior Court dated December 15, 1971.

The action was heard by *Ponte, J.,* on demurrer.

*Paul R. Sugarman (James S. Robbins* with him) for the plaintiff.

*Joseph L. Cotter (Dennis O'Dea* with him) for the defendant.

KAPLAN, J. A spouse suffers bodily injuries through the negligence of a third party. Does the other spouse have a claim against the tortfeasor for a loss of consortium that results from the injuries? The present appeal provides us with an opportunity to reconsider this question[1] upon which the common law has spoken in recent years with exceptional vigor.

---

[1]This court on its own motion pursuant to G. L. c. 211A, § 10(A), inserted by St. 1972 c. 740 § 1, and S. J. C. Rule 3:24, § 4 (5), 359 Mass. 837, transferred the present appeal from the Appeals Court after it had been lodged and briefed there.

The case arises on the pleadings. Milagros Diaz alleges in her declaration in one count[2] that she is the wife of Jose Santos Diaz; that the defendant Eli Lilly and Company is the manufacturer and merchant of a fungicide called "Parnon"; that Jose made use of "Parnon" in the course of his work on various dates from August, 1968 to September, 1970; that as a result of his exposure to "Parnon," Jose sustained severe bodily injuries; that in consequence of these injuries to Jose, the plaintiff Milagros has suffered a loss of the consortium of Jose, including his "services, society, affection, companionship, [and] relations," all to her damage; that the defendant is responsible therefor because it manufactured the product negligently in that it failed to give adequate warning of the dangers involved to the user. To this declaration the defendant demurred on the ground that it stated no cause of action. A judge of the Superior Court sustained the demurrer, refusing leave to amend. From this ruling the plaintiff takes her appeal. It appeared at the argument that the husband Jose has pending in the Superior Court an action against the defendant for his injuries, instituted before the wife's action.[3]

Some perspective is needed.[4] In olden days, when married women were under legal disabilities corresponding to their inferior social status, any action for personal or other injuries to the wife was brought in the names of the husband and wife, and the husband was ordinarily entitled to the avails of the action as of his own property. The husband had, in addition, his own recourse by action without even nominal joinder of the wife against those who invaded the conjugal relationship, for example, by criminal conversation with or abduction of his wife. At one time the gravamen of the latter claims for loss of consortium was the deprivation of the

---

[2]Two other counts of the declaration were waived in open court.

[3]The husband moved in his action to add his wife as a party plaintiff but the motion was denied. Thereafter the wife instituted the present action.

[4]See Lippman, The Breakdown of Consortium, 30 Col. L. Rev. 651 (1930); Brett, Consortium and Servitium — A History and Some Proposals, 29 Austr. L. J. 321, 389, 428 (1955); Harper & James, Torts, § 8.9 (1956); Prosser, Torts (4th ed. 1971) §§ 124-125.

wife's services conceived to be owing by the wife to the hus-
band;[5] the action was similar to that of a master for entice-
ment of his servant. Later the grounds of the consortium ac-
tion included loss of the society of the wife and impairment
of relations with her as a sexual partner, and emphasis
shifted away from loss of her services or earning capacity.[6]
The defendant, moreover, need not have infringed upon the
marital relation by an act of adultery or the like, for he could
inflict similar injuries upon the husband in the way of loss of
consortium by an assault upon the wife or even a negligent
injury.[7] Meanwhile, what of the wife's rights? She had none
analogous to the husband's. The husband was of course
perfectly competent to sue without joinder of the wife for in-
juries to himself, and there was no thought that the wife had
any legal claim to the husband's services or his sexual or
other companionship — any claim, at any rate, in the form
of a cause of action for third-party damage to the relation-
ship.

With the coming in of the married women's acts in the
mid-nineteenth century,[8] the wife became competent to sue
in her own name for injuries to herself and could retain the
proceeds of those actions. Her injuries for which she could
recover judgment included loss of her capacity to render ser-
vices in the home as well as to earn money on the outside;
the husband, in Massachusetts at least, no longer had a claim
even for household help required because of his wife's dis-
ablement.[9] The question naturally arose whether after the
married women's acts the husband's actions above described

[5]It may be that the earliest idea of consortium was broader than a right to services.
See *Igneri* v. *Cie. de Transports Oceaniques,* 323 F 2d 257, 263, n. 15 (2d Cir. 1963);
Brett, *supra,* n. 4, 29 Austr. L. J. at 325-328; Note, Judicial Treatment of Negligent
Invasion of Consortium, 61 Col. L. Rev. 1341, 1343-1344 (1961).

[6]Cf. Prosser, *supra,* n. 4, § 124, at p. 873: "There has been a gradual shift of em-
phasis away from 'services' and toward a recognition of more intangible elements
in the domestic relations, such as companionship and affection." See also Harper &
James, *supra,* n. 4, § 8.9, at p. 643.

[7]*Barnes* v. *Hurd,* 11 Mass. 59 (1814). *Bigaouette* v. *Paulet,* 134 Mass. 123, 124-125
(1883). *Kelley* v. *New York, N. H. & H. R.R.* 168 Mass. 308, 311 (1897). See
Prosser, *supra,* § 125, at pp. 888-891.

[8]Now embodied in G. L. c. 209, §§ 1-13.

[9]*Rodgers* v. *Boynton,* 315 Mass 279, 281-282 (1943).

for loss of consortium should be ruled obsolete or whether, on the contrary, they should be held to survive in substantial dimension and be complemented by analogous remedies extended to the wife. To be sure, loss of the wife's services or earnings could no longer figure in a right of consortium on the part of the husband, but the other components of the right — the wife's society or companionship or assistance and her sexual availability — could remain. It was held very widely that husbands still retained their consortium rights, the element of loss of wives' services and earnings, however, being excluded from the husbands' recoveries as belonging to the wives themselves.[10] And it was generally held that the new status of married women implied at least some rights of consortium on their part. If adultery with or alienation of the affections of a wife was a wrong to the husband, similar traffic of another woman with the husband should be actionable by the wife. Wives were readily accorded these rights of action.[11]

However, there was difficulty about wives' recovery for acts of third parties not so plainly attacking the marriage relation, say acts of negligence toward the husband injuring him in such a way as to deprive the wife of his society and sexual comfort. The difficulty was perhaps traceable in the end to the reluctance of judges to accept the women's emancipation acts as introducing a broad general premise for fresh decision. This court had peculiar trouble with the problem and was finally led to deny the cause of action to the wife — and then to go on to reverse previous decisions and withdraw the parallel cause of action from the husband.

We note briefly the vagaries in this case development.[12] *Kelley* v. *New York, N. H. & H. R.R.* 168 Mass. 308 (1897), had stated, perhaps as dictum, that after the married women's acts the husband still retained the action for loss of

---

[10]*Bigaouette* v. *Paulet,* 134 Mass. 123 (1883). *Kelley* v. *New York, N. H. & H. R.R.* 168 Mass. 308 (1897). *Duffee* v. *Boston Elev. Ry.* 191 Mass. 563 (1906). *Kaye* v. *Newhall,* 356 Mass. 300 (1969), S. C. 360 Mass. 701. See Prosser, *supra,* § 124, at pp. 874-877, § 125, at pp. 888-891.

[11]*Nolin* v. *Pearson,* 191 Mass. 283 (1906). Prosser, *supra,* § 124, at pp. 881-882.

[12]Also traced and commented upon in the dissenting opinion in *Lombardo* v. *D. F. Frangioso & Co. Inc.* 359 Mass. 529, 532-534 (1971).

Diaz *v.* Eli Lilly & Co.

consortium by reason of negligence of a defendant causing the wife bodily injuries (excluding recovery for loss of services). In the particular case, the husband's action had in fact been tried together with the wife's for her own injuries. Adverted to, but left open, was the question whether a wife had a corresponding action for loss of consortium of her husband due to third-party negligence. In *Duffee* v. *Boston Elev. Ry.* 191 Mass. 563 (1906), decided nine years later, the same consortium right for negligent injury of the wife was emphatically upheld — to which was subjoined the husband's right of reimbursement of his expenditures for medical care and cure of the wife made in fulfillment of his duty of support.[13] Chief Justice Knowlton wrote that the husband's consortium action indeed stood apart from his wife's claim for her personal injuries; thus the fact that she had been previously defeated in her negligence action against the same defendant was irrelevant to the husband's action and could not be used therein to support a plea of res judicata.[14] See also *Hey* v. *Prime,* 197 Mass. 474 (1908).

There was more than an intimation in *Nolin* v. *Pearson,* 191 Mass. 283, 286 (1906) (allowing a wife's action for adultery with her husband), decided within two months of the *Duffee* case, that the new legal equality of married women would entail giving the wife full rights of consortium, so that the *Kelley* case, fortified by the *Duffee* case, might be expected to have its counterpart in the wife's action for negligent injury of her husband. However, *Feneff* v. *New York Cent. & Hudson River R.R.* 203 Mass. 278 (1909), changed the direction of the law. That was an action

[13]See G. L. c. 231, § 6A, and *King* v. *Solomon,* 323 Mass. 326, 330-332 (1948), as to admission of the husband as a party in the wife's personal injury action so that he may recover for medical expenses incurred by him for her care and cure.

[14]Cf. *Erickson* v. *Buckley,* 230 Mass. 467, 470-473 (1918). The consortium claim, however, has been treated as so far derivative (or owing to the marriage entity as such) that contributory negligence of the spouse who suffered the physical injuries is held to bar the plaintiff's claim (as would the plaintiff's own negligence contributing to the injuries). See Harper & James, Torts, § 23.8, at p. 1280; annotation, 21 A. L. R. 3d 469 (1968). Cf. *Thibeault* v. *Poole,* 283 Mass. 480, 483-487 (1933). So also in a regime of comparative negligence, the plaintiff's recovery has been reduced to the extent the other spouse was found negligent. *Nelson* v. *Busby,* 246 Ark. 247, 254-255 (1969).

Diaz *v*. Eli Lilly & Co.

by the wife for loss of consortium of her husband who had been injured by negligence of the defendant railroad. The husband had sued the railroad previously and had had judgment (see *Feneff* v. *Boston & Maine R.R.* 196 Mass. 575 [1907]). The court now held that the wife could not maintain her action, and the reasons assigned were such as to call logically for abrogation of the husband's right as well — the one affirmed in the *Kelley* and *Duffee* cases — saving only the husband's right to reimbursement for expenditures for care and cure. Chief Justice Knowlton in fact indicated expressly that the *Kelley* case was shaken (strangely, he did not mention his opinion in the *Duffee* case). But as the *Feneff* decision appeared to rest in considerable part on a fear of double recovery if the wife were allowed her action after the husband had actually secured a judgment for the same accident in his own action, there remained a possibility that the law of Massachusetts would allow a recovery for loss of consortium due to negligence if any chance of double recovery were rigorously prevented — say by trying both actions together, with careful and discriminating instructions to the jury. Those procedural expedients were not explored by the court in later cases.[15] In *Lombardo* v. *D. F. Frangioso & Co. Inc.* 359 Mass. 529 (1971), the majority of the court considered it to be the law of the Commonwealth that a spouse had no enforceable right for loss of consortium resulting from personal injury negligently inflicted on the other spouse. The majority declined to reconsider the question in any detail, believing that a change must come about by legislative action if at all; the minority would have reconsidered the question and upheld the right equally for husband and wife.

To revert to the lines of reasoning used or intimated in the *Feneff* opinion. The opinion conceded that for "intentional" (203 Mass. at 280) invasions of the wife's right of consortium

---

[15]*Bolger* v. *Boston Elev. Ry.* 205 Mass. 420 (1910). *Whitcomb* v. *New York, N. H. & H. R. R.* 215 Mass. 440 (1913). *Gearing* v. *Berkson*, 223 Mass. 257 (1916). *Rodgers* v. *Boynton*, 315 Mass. 279 (1943). *Thornton* v. *First Natl. Stores, Inc.* 340 Mass. 222 (1960).

— as by adultery with or alienation of affections of the husband — the wife could now recover. This was explained on a technical ground as following from the fact that by statute the wife had become entitled to sue in her own name; formerly the husband would have had to institute such an action joining his wife, but his own misconduct would be taken to bar him. In fact the wife's right for the "intentional" invasions had been earlier established in Massachusetts on broader grounds of policy. *Nolin* v. *Pearson,* 191 Mass. 283, 286 (1906).[16]

There is an incongruity in allowing either spouse a consortium right for an "intentional" invasion but denying the right when the conjugal relationship suffers as much or more disturbance and injury through third-party negligence.[17] It is true that in the "intentional" cases of criminal conversation or alienation of affections the third person would often escape all civil liability if a consortium right was not recognized, while in the negligence cases that person remains in all events subject to a conventional action by the spouse physically injured. See *Bolger* v. *Boston Elev. Ry.* 205 Mass. 420 (1910). But to make a consortium claim hang on this difference seems to overplay the motive of punishment and hardly explains why actual injury to the other spouse should go uncompensated. In fact, the "intentional" characterization is not always quite deserved, for a defendant charged with criminal conversation or alienation of affections can be liable although harboring no malicious design, being in truth the seduced rather than the seducer, and at least in the case of criminal conversation, unaware even that a marital rela-

---

[16]It has been suggested that as the husband would not have been barred by his misconduct from joining his wife in an action for the wife's loss of consortium occasioned by negligent injury of the husband, the absence of such actions in early days shows that the common law disfavored them on deliberate substantive grounds and not merely for procedural reasons. See *Igneri* v. *Cie. de Transports Oceaniques, supra,* n. 5, 323 F. 2d at 262, n. 14. The point is obscure. The common-law position is probably better explained by the inferior social position of women which excluded any serious thought of a consortium right on their part. See Lippman, *supra,* n. 4, 30 Col. L. Rev. at 664; Prosser, *supra,* § 124, at p. 881.

[17]The majority opinion in the *Lombardo* case simply said that the rule as to "intentional" interference with the marital relationship "is different." 359 Mass. 529, 530, n.1 (1971).

tion existed.[18] The institution of marriage may be thought to suffer more shock from "intentional" than from negligent acts. But with respect to the reality of the injuries to the persons involved, we have to compare the hurt feelings, which may be temporary, of the wife whose husband's affections have been diverted, with the wife's loss of companionship and affection, of sexual enjoyment, and of prospects of motherhood, when her husband has been reduced to a husk of manhood by physical and psychological injury caused by negligent fault of the defendant, when she has been changed "from a loving wife into a lonely nurse."[19] It was merely obfuscating for the *Feneff* court to call the "intentional" type of injury "direct" and the negligent "indirect" or "remote" (203 Mass. at 280, 281), and erroneous to suppose that the damages are more speculative in the latter case than in the former.[20] A consortium action resulting from physical injury of the spouse through negligence, moreover, carries no potentiality for blackmail such as notoriously attaches to the "heart balm" actions of criminal conversation and alienation of affections; the danger of extortion has indeed led to the abolition of those actions by statute in a number of States.[21] It is noteworthy that the consortium action by either spouse for negligence of a third party has been affirmed by courts despite the legislative abolition in those States of the "intentional," "heart balm" actions.[22]

---

[18]See *McGrath* v. *Sullivan,* 303 Mass. 327, 331 (1939); Prosser, *supra,* § 124, at pp. 877-878.

[19]*Ekalo* v. *Constructive Serv. Corp. of America,* 46 N. J. 82, 84 (1965). See *Montgomery* v. *Stephan,* 359 Mich. 33, 35 (1960).

It has been noted that for adultery or desertion the wife can seek a divorce and with it a chance to remarry, whereas in case of serious disability of the husband due to negligent injury she may be left with a permanent burden and lose all possibility of rearing children. See *Igneri* v. *Cie. de Transports Oceaniques,* 323 F. 2d 257, 262, n. 13 (2d Cir. 1963).

[20]The majority in the *Lombardo* case, however, stressed the speculative character of the recovery, citing a report of the Massachusetts Judicial Council. 359 Mass. 529, 531, n. 3 (1971).

[21]See Note, *supra,* n. 5, 61 Col. L. Rev. at 1345.

[22]This is the case in New York, New Jersey, and Michigan which are among the many jurisdictions that have now allowed the consortium action by either spouse. *Millington* v. *Southeastern Elev. Co. Inc.* 22 N. Y. 2d 498 (1968). *Ekalo* v. *Constructive Serv. Corp. of America,* 46 N. J. 82 (1965). *Montgomery* v. *Stephan,* 359 Mich. 33 (1960).

A spouse physically injured through the negligence of a stranger has an action against him, and the *Feneff* court evidently thought it was supererogative and dangerously productive of double recovery to add an action by the other spouse for loss of consortium, especially as the benefits of a favorable judgment in the negligence action tend as a practical matter to be shared by both spouses. The recovery in that action, it was suggested, is a "full" one (203 Mass. at 280, 281, 282). Where the husband is plaintiff, his recovery includes compensation for impairment of his capacity to support his wife, and where the wife is plaintiff, she recovers for impairment of her earning capacity including her ability to render household services. The *Feneff* opinion appears to suggest that these recoveries themselves cover and thereby exhaust any right of consortium. But the mistake here lies in failing to recall that consortium had long since comprised the right to society and sexual relations, and had in fact been emptied of the element of services or earning capacity; that was entirely clear in the actions for criminal conversation or the like.[23] Indeed, no recovery allowed to the plaintiff spouse in the negligence action can properly extend to loss of consortium suffered by the other spouse. This proposition holds when there is recovery in the negligence action for impairment of the plaintiff's ability to perform sexually or to procreate; the corresponding and additional injury to the other spouse is not entitled to figure in the award of damages to the plaintiff.[24]

To say all this is not to deny the real, as opposed to the theoretical possibilities of double recovery when a consortium action is maintained in addition to the negligence action. The danger arises when the judge in the negligence action instructs loosely and the jury quite naturally, but improperly, considers all the damage to the marriage entity rather than just the damage to the spouse who is the plaintiff in the action. But the danger can be obviated, as courts else-

---

[23]Harper & James, *supra,* § 8.3, at p. 611. Prosser, *supra,* § 124, at p. 874.

[24]See *Ekalo* v. *Constructive Serv. Corp. of America,* 46 N.J. 82, 90-91 (1965); .*Deems* v. *Western Md. Ry.* 247 Md. 95, 108-109 (1966).

where have clearly recognized.[25] As a practical matter, the consortium claim, when asserted at all, will usually be presented together with the negligence claim for the physical injuries, husband and wife joining in the same action.[26] Such joinder is of course permitted and invited by the procedural rules.[27] When, perchance, separate actions have been brought, the defendant (or plaintiffs in the actions) would normally be entitled to have them consolidated for trial.[28] Further, we think the defendant could ordinarily insist, if he considered it to his advantage, that the other spouse be joined in the main negligence action so that a possible claim for loss of consortium should not be outstanding when the negligence claim was disposed of, leaving a possibility of duplicating recoveries.[29] Further to avoid redundant recovery, there should in all events be plain instructions to the jury describing and distinguishing the different elements of compensable damage. The key to the present problem can thus be seen as procedural. Justice Jacobs saw the exact point when he said in *Ekalo* v. *Constructive Serv. Corp. of America,* 46 N. J. 82, 91-92 (1965): "The defendants urge that denial of the wife's consortium action would find sensible foundation in the fact that a jury will ordinarily con-

---

[25]See especially the *Ekalo* and *Deems* cases, *supra,* n. 24, 46 N.J. at 90-92, 247 Md. at 108-115; *Moran* v. *Quality Aluminium Casting Co.* 34 Wis. 2d 542, 558 (1967).

[26]See *Millington* v. *Southeastern Elev. Co. Inc.* 22 N. Y. 2d 498, 502 (1968). Cf. *supra,* n. 13. And as mentioned in the dissenting opinion in the *Lombardo* case, 359 Mass. 529, 532, 539, (1971), counsel may well consider it self-defeating to urge a consortium claim when the physical injury is less than serious.

[27]The joinder is now allowed by G. L. c. 231, § 4A, and will be by Rule 20 (a) of the new Rules of Civil Procedure, promulgated by this court to come into effect on July 1, 1974. Order of July 13, 1973, amended by order of September 6, 1973. (It may be observed that there was no similar general provision in R. L. c. 173, § 2 et seq. [1902], in force at the time of the *Feneff* case.)

[28]There was consolidated trial in the *Kelley* case, 168 Mass. 308 (1897). See Rule 42 (a) of the new Rules of Civil Procedure.

[29]This should be very clear under Rule 19 ("Joinder of Persons Needed for Just Adjudication") of our new Rules of Civil Procedure, paralleling Rule 19 of the Federal Rules. The principal ground for requiring joinder on the defendant's motion is that the defendant would otherwise be exposed to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . .." See Rule 19 (a). In such a situation, if the spouse could not be joined as a party, and refused to join voluntarily, the court would have to determine whether "in equity and good conscience" it should dismiss the action or allow it to go forward with only the one

Diaz v. Eli Lilly & Co.

sider the other spouse's loss of consortium and will allow 'a full and complete recovery for the family' in the main action by the spouse who suffered the accident. But if that be so, would it not be more just and more forthright for the law to recognize with equality the respective claims and compel their joinder in a single proceeding during which a jury could be fully and fairly instructed as to the nature and limits of the independent demands for recovery. . . . Such a requirement of joinder would furnish additional protection against the suggested danger of double recovery."[30]

We conclude that the reasoning of the *Feneff* case is vulnerable, and its result unsound, and we are strengthened in this view by the movement of opinion in this country since 1950 toward recognizing a right of action in either spouse for loss of consortium due to negligent injury of the other.[31] We should be mindful of the trend although our decision is not reached by a process of following the crowd. Without attempting a count of the decisions, we may summarize the position roughly as follows.[32] The right of the husband has

---

spouse as plaintiff. See Rule 19 (b).

The cases of *Sove* v. *Smith,* 311 F. 2d 5 (6th Cir. 1962), and *Wright* v. *Schebler Co.* 37 F. R. D. 309, 320-321 (S. D. Iowa 1965), declining to compel the joinder, arose before the rewriting of Federal Rule 19 in 1966, and were concerned with interpretations of the State substantive law of consortium.

There was, of course, nothing comparable to Rule 19 or the conception underlying it at the time of the *Feneff* decision or in the period following.

See also *infra* n. 30, second paragraph.

[30]The New Jersey court apparently went further than Rule 19 suggests when it declared in the *Ekalo* case, either as case law or as an exercise of its rulemaking power, that "In all future actions, the wife's consortium claim may be prosecuted *only if* joined with the husband's action" (emphasis added). 46 N. J. at 95-96. See also the *Deems* case, where the consortium rights are viewed as owned by the marriage entity (i.e. jointly by husband and wife) and evidently must be asserted in the negligence action. 247 Md. at 108-109, 115. Wisconsin has found, however, that a rule absolutely requiring joinder is too Draconian. See *Fitzgerald* v. *Meissner & Hicks, Inc.* 38 Wis. 2d 571, 580-582 (1968).

We would leave open the possibility that in appealing circumstances the consortium claim might be held to be lost if not asserted by the time the negligence action is tried.

[31]The trend is described in Prosser, *supra,* § 125, at pp. 894-896.

[32]See the summary with citation of the cases in the dissenting opinion in the *Lombardo* case, 359 Mass. 529, 534-535 (1971). A later summary appears in annotation, 36 A. L. R. 3d 900 (1971). See also the lineup of jurisdictions (with outline of arguments) in Restatement 2d: Torts (Tent. draft No. 14, April 15, 1969, pp. 13-21).

Diaz v. Eli Lilly & Co.

long been acknowledged in a very substantial majority of the jurisdictions. The right of the wife, first confirmed in *Hitaffer* v. *Argonne Co. Inc.* 183 F. 2d 811 (D. C. Cir.), cert. den. sub nom. *Argonne Co. Inc.* v. *Hitaffer,* 340 U. S. 852 (1950), and most recently in *Glendale* v. *Bradshaw,* 108 Ariz. 582 (1972), has now been established in perhaps half the American jurisdictions; the result has been achieved in some States by overruling relatively recent precedent in point.[33] In certain jurisdictions the wife's right has been denied although the husband's right is still affirmed — a regrettable solecism.[34] A few jurisdictions have followed our *Feneff* case or another route to a conclusion denying the right both to husband and wife.[35] Having in the first Restatement of Torts published in 1938 affirmed the husband's right and denied the wife's in accordance with the then weight of authority,[36] the American Law Institute in Restatement Second will state that husband and wife have the right on equal terms, adding the requirement — in recognition of the significant procedural point — that where possible the consortium claim must be joined with the claim for bodily injury.[37] This resolution of the problem conforms to the prevailing ideas of the commentators.[38]

To a few critics the idea of a right of consortium seems no more than an anachronism harking back to the days when a married woman was a chattel slave, and in a formulation such as that of the new Restatement they would find a poten-

---

[33]As in New York, *Millington* v. *Southeastern Elev. Co. Inc.* 22 N. Y. 2d 498 (1968); Arizona, *Glendale* v. *Bradshaw,* 108 Ariz. 582 (1972); Maryland, *Deems* v. *Western Md. Ry.* 247 Md. 95 (1966).

[34]The argument has been made that this condition of the law infringes constitutional guaranties of equal protection of the laws. See cases cited, annotation, 36 A. L. R. 3d at 924-926.

[35]See *Marri* v. *Stamford St. R.R.* 84 Conn. 9 (1911).

[36]At §§ 693, 695.

[37] The relevant sections have not yet been published in final form, but the substance with argumentation is given in Tent. draft No. 14, *supra,* n. 32, at pp. 13-21, and Am. Law Inst., Proceedings of the Forty-Sixth Annual Meeting (1969), pp. 148-158, 162-163.

[38]For references to the numerous writings, see *Igneri* v. *Cie. de Transports Oceaniques,* 323 F. 2d 257, 261, nn. 11-12 (2d Cir. 1963); *Ekalo* v. *Constructive Serv. Corp. of America,* 46 N. J. 82, 89 (1965); Prosser, *supra,* § 125, at p. 894, n. 5.

Diaz *v.* Eli Lilly & Co.

tial for indefinite expansion of a questionable liability.[39] But that formulation, reflecting a strong current of recent decisions, is a natural expression of a dominant (and commonplace) theme of our modern law of torts, namely, that presumptively there should be recourse for a definite injury to a legitimate interest due to a lack of the prudence or care appropriate to the occasion.[40] That it would be very difficult to put bounds on an interest and value it is a possible reason for leaving it without protection at least in the form of an action for money damages. But the law is moderately confident about the ability of the trier (subject to the usual checks at the trial and appellate levels) to apply common sense to the question. The marital interest is quite recognizable and its impairment may be definite, serious, and enduring, more so than the pain and suffering or mental or psychic distress for which recovery is now almost routinely allowed in various tort actions. The valuation problem here may be difficult but is not less manageable. Nor does it follow that if the husband-wife relationship is protected as here envisaged, identical protection must be afforded by analogy to other relationships from that of parent-child in a lengthy regress to that of master-servant; courts will rather proceed from case to case with discerning caution.[41] In the same spirit we should accept that courts may have an interpretive task ahead in spelling out the consortium right in harmony with existing statutes.[42]

---

[39] See Jaffe, Damages for Personal Injury: The Impact of Insurance, 18 Law & Contemp. Prob. 219, 228-231 (1953); *Deshotel v. Atchison, Topeka & Santa Fe Ry.* 50 Cal. 2d 664 (1958); *Dini* v. *Naiditch,* 20 Ill. 2d 406, 431 (1960) (dissenting opinion); *Neuberg* v. *Bobowicz,* 401 Pa. 146 (1960).

The argument that the logic of sustaining the spouse's claim might carry over to other relations besides the marital is also made in the *Feneff* case, 203 Mass. at 281-282. See *infra,* n. 41.

[40] See the remarks of Jacobs, J., in the *Ekalo* case on "the just effort to afford decent compensatory measure to those injured by the wrongful conduct of others." 46 N. J. at 93.

[41] The jurisdiction that decided the leading *Hitaffer* case denied that it was required by analogy to allow a child a right of action against a third person who had negligently injured its parent. *Pleasant* v. *Washington Sand & Gravel Co. Inc.* 262 F. 2d 471 (D. C. Cir. 1958) (Washington, J.).

[42] E.g. *Smither & Co. Inc.* v. *Coles,* 242 F. 2d 220 (D. C. Cir.), cert. den. sub nom. *Coles* v. *Smither & Co. Inc.* 354 U. S. 914 (1957) (relation of consortium to a workmen's compensation act — overrules the *Hitaffer* case on the particular point). See annotation, 36 A. L. R. 3d at 929-932.

Diaz *v.* Eli Lilly & Co.

The majority opinion in the *Lombardo* case suggested that if the *Feneff* doctrine were to be overruled, it should be by legislation rather than judicial decision. But it is worth recalling that the *Feneff* case itself overruled doctrine reiterated by the court only three years before. In a field long left to the common law, change may well come about by the same medium of development.[43] Sensible reform can here be achieved without the articulation of detail or the creation of administrative mechanisms that customarily comes about by legislative enactment. Indeed the Legislature may rationally prefer to act, if it acts at all, after rather than before the common law has fulfilled itself in its own way.[44] In the end the Legislature may say that we have mistaken the present public understanding of the nature of the marital relation, but that

---

[43]The argument that legislative action should be awaited has been rejected in many decisions extending a right of consortium. See, e.g., *Millington* v. *Southeastern Elev. Co. Inc.* 22 N. Y. 2d 498, 508 (1968). For the contrary view, see *Deshotel* v. *Atchison, Topeka & Santa Fe Ry.* 50 Cal. 2d 664, 667-669 (1958). For some examples of changes effected by decisions of this court in the field of torts that may be thought more substantial than that involved in the present case, see *Kabatchnick* v. *Hanover-Elm Bldg. Corp.* 328 Mass. 341 (1952) (scope of permissible "seller's talk"); *Keyes* v. *Construction Serv. Inc.* 340 Mass. 633 (1960) (right of action for prenatal injuries); *Brune* v. *Belinkoff,* 354 Mass. 102 (1968) (enlarging physicians' duty of care); *Colby* v. *Carney Hosp.* 356 Mass. 527 (1969) (forecasting abolition of the doctrine of charitable immunity); *George* v. *Jordan Marsh Co.* 359 Mass. 244 (1971) (right of action for intentionally caused mental distress resulting in bodily harm); *Gaudette* v. *Webb,* 362 Mass. 60 (1972) (limitations period in wrongful death action); *Knowles* v. *Gilchrist Co.* 362 Mass. 642 (1972) (shift of a burden of proof from bailor to bailee-for-hire); *Morash & Sons, Inc.* v. *Commonwealth,* 363 Mass. 612 (1973) (denial of sovereign immunity of Commonwealth for maintaining private nuisance); *Mounsey* v. *Ellard,* 363 Mass. 693 (1973) (unitary duty of care toward licensees and invitees); *Gildea* v. *Ellershaw,* 363 Mass. 800 (1973) (confinement of liability of public officers for negligence).

[44]See Keeton, Venturing to do Justice 18-20 (1969); Friedmann, Legal Philosophy and Judicial Lawmaking, 61 Col. L. Rev. 821, 838 (1961). The Legislature responded to the problem of charitable immunity by St. 1971 c. 785 (G. L. c. 231, § 85K) after, not before, our decision in the *Colby* case, *supra,* n. 43. Cf. *Morash & Sons, Inc.* v. *Commonwealth, supra,* n. 43, at 623-624 (1973) .

A bill (Senate No. 692) to recognize a consortium right based on personal injury failed in our Senate during the 1973 session after favorable report by the Judiciary Committee, but this hardly counts as a manifestation of popular will against the idea. Apart from possible objections to the particular terms of the bill, senators might well have felt that this was a common-law matter for the courts — the present appeal was awaiting decision at the time. Similar bills had been filed in earlier years. See the *Lombardo* case, 359 Mass. 529, 531 (1971).

See the remarks of Professor H. M. Hart, Jr., on "The Fallacy of Legislating by not Legislating" in Legal Institutions Today and Tomorrow 45-48 (Paulsen ed. 1959).

we cannot now divine or anticipate.[45]

The reform is not a drastic or radical incursion upon existing law. In no serious way will an existing interest be impaired or an expectation be disappointed or a reliance be defeated.[46] See *Fitzgerald* v. *Meissner & Hicks, Inc.* 38 Wis. 2d 571, 578 (1968) (viewing any problem of insurance coverage here as minimal). Accordingly there is no occasion to take full precautions to confine our decision to prospective operation.[47] As a matter of sound administration and fairness, however, we declare that where the claim for the physical injuries has been concluded by judgment or settlement or the running of limitations prior to the coming down of this opinion, no action for loss of consortium thereafter instituted arising from the same incident will be allowed, even if that action would not be otherwise barred by limitations. In this we follow the declarations made in similar circumstances by the courts of New York, New Jersey, and Maryland.[48]

Overruling the *Lombardo* decision, and holding that either spouse has a claim for loss of consortium shown to arise from personal injury of the other spouse caused by negli-

[45]It may be noted that when the Legislature recently addressed itself to the statute-created and statute-governed action for wrongful death and amended the statutory provision in the direction of making the recovery compensatory rather than dependent on the degree of fault of the tortfeasor, it allowed, among the elements of compensation to those entitled, "the loss of the reasonably expected . . . protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent . . .." St. 1973, c. 699, approved August 27, 1973, amending G. L. c. 229, § 2. Cf. *Knowles* v. *Gilchrist Co.* 362 Mass. 642, 651-652 (1972) (decisional change of common-law rule supported by parallel legislative action in a related field).

[46]"There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years." Cardozo, The Nature of the Judicial Process 151 (1921).

[47]See Keeton, *supra,* n. 44, c. 3; Mishkin, Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv. L. Rev. 56, 58-72 (1965); Note, 71 Yale L. J. 907 (1962).

[48]See the *Millington, Ekalo,* and *Deems* cases, 22 N. Y. 2d at 507-508; 46 N. J. at 95-96; 247 Md. at 115.

It is also to be understood that any consortium claim which, independently considered, has been barred by limitations, will not be revived by attempted joinder in an action by the other spouse for the physical injuries which may itself have been timely instituted.

gence of a third person, we reverse the order sustaining the demurrer to the present declaration. The parties will then be at liberty to take appropriate steps to consolidate or otherwise combine the two pending actions.

*Order reversed.*