BLANCHE LEWIS *vs.* LARRY C. LEWIS.

Hampden.    January 6, 1976. — July 9, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Husband and Wife.    Actionable Tort.    Public Policy.*

Discussion of the common law doctrine of interspousal immunity. [620-624]

A tort suit between husband and wife was not barred by G. L. c. 209, § 6, as appearing in St. 1963, c. 765, § 2. [624-628]

In an action in tort by a wife against her husband, there was no merit in the defendant's contention that any change in the common law doctrine of interspousal immunity should be made by the Legislature rather than the judiciary. [624-629]

The common law doctrine of interspousal immunity will no longer bar an action in tort arising out of a motor vehicle accident by one spouse against the other. [629-630]

TORT. Writ in the Superior Court dated March 5, 1974. The action was heard by *Moriarty*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Morton J. Sweeney* (*Patricia A. Bobba* with him) for the plaintiff.

*George J. Shagory* (*Edward J. Shagory* with him) for the defendant.

*Robert M. Fuster* for Juliette G. Pevoski, amicus curiae, submitted a brief.

*J. Norman O'Connor & John D. Lanoue,* for Joseph J. Pevoski, amicus curiae, submitted a brief.

REARDON, J.   This matter raises the question of the continuance in Massachusetts of the doctrine of interspousal immunity. The case originated as a civil action of tort for personal injuries brought by the plaintiff Blanche Lewis against her husband, the defendant Larry Lewis. The defendant's motion for summary judgment was granted, and we allowed the plaintiff's motion for direct appellate review. Blanche Lewis was a passenger in a car owned and driven by her husband on July 27, 1973, when about 9 P.M., on a public highway in the town of Agawam, the car slid on a wet pavement, struck a light pole and rolled over on its side, causing injury to the plaintiff. The motion for summary judgment which was allowed was based on the common law doctrine of interspousal immunity and on the provisions of G. L. c. 209, § 6, as amended by St. 1963, c. 765, § 2. In addition to briefs filed by the parties we also reviewed briefs filed by counsel in a case raising a similar question commenced in the Superior Court in Berkshire County. We are thus led to a discussion of the current status of the doctrine of interspousal immunity and our opinion relative to the argument here presented by the plaintiff.

The fundamental basis for the common law rule of interspousal immunity was the special unity of husband and wife within the marital relationship. For most purposes the common law treated husband and wife as "a single person, represented by the husband." *Nolin* v. *Pearson,* 191 Mass. 283, 284 (1906). See *Butler* v. *Ives,* 139 Mass.

202, 203 (1885). This merger of legal identities has been described in the following terms: "By marriage, the husband and wife are one person in law: ... that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband; under whose wing, protection, and *cover*, she performs everything .... Upon this principle, of a union of person in husband and wife, depend almost all the legal rights, duties, and disabilities, that either of them acquire by the marriage." 1 W. Blackstone, Commentaries *442.

Among the many disabilities visited upon a woman once she took her marriage vows was an inability to sue or be sued in her own name. To enforce any right of action for tortious injury to her person her husband had to be joined as a plaintiff; and, furthermore, he was entitled to the proceeds of any judgment obtained. Conversely, to enforce an action against a married woman it was necessary to join the husband as a defendant, and a judgment, if obtained during coverture, became the obligation of the husband. McCurdy, Personal Injury Torts Between Spouses, 4 Vill. L. Rev. 303, 304 (1959). 1 F. Harper & F. James, Torts § 8.10, at 643 (1956).

Within this framework a rule prohibiting suits between husband and wife made some sense. Not only was there the conceptual problem of the single marital entity suing itself but, as a practical matter, the rules of liability would have rendered such suits idle exercises. As Dean Prosser pointed out: "If the man were the tort-feasor, the woman's right would be a chose in action which the husband would have the right to reduce to possession, and he must be joined as a plaintiff against himself and the proceeds recovered must be paid to him .... If the wife committed the tort, the husband would be liable to himself for it, and must be joined as a defendant in his own action." W. Prosser, Torts § 122, at 860 (4th ed. 1971).

These antediluvian assumptions concerning the role and status of women in marriage and in society which animated and gave support to the common law rule of inter-

spousal immunity were soon perceived as inconsistent with the principles and realities of a progressing American society. Beginning in the middle of the Nineteenth Century, women's emancipation acts were passed in all American jurisdictions in order to secure to married women their own independent legal identities. See W. Prosser, Torts § 122, at 861 (4th ed. 1971); McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030, 1036-1037 (1930). In Massachusetts, beginning with St. 1845, c. 208, the Legislature through a series of enactments now found in G. L. c. 209, §§ 1-13, has moved to recognize and invigorate the legal identity of the married woman. Most of the disabilities which rendered women second class citizens under the common law were removed by these statutes in Massachusetts. They provide inter alia that a married woman may hold and dispose of both real and personal property (G. L. c. 209, § 1), may enter into contracts in her own name (G. L. c. 209, § 2), and may sue and be sued in her own name without joinder of her husband, and without her husband's being liable for judgments against her (G. L. c. 209, §§ 6, 8). As we recognized as early as 1906 in *Nolin* v. *Pearson, supra* at 285, "This remedial legislation has resulted in very largely impairing the unity of huband and wife as it existed at common law." The old order has been changing and the doctrine of the legal unity of husband and wife is no longer a satisfactory foundation on which to base a rule of interspousal tort immunity.[1]

Despite the demise of the unity theory of husband and wife and the enactment of married women's acts, the rule

---

[1] What we have said is not to be interpreted as a derogation of the spiritual and emotional unity that many hold as an ideal in marriage. As the Supreme Court of Washington pointed out, "The 'supposed unity' of husband and wife, which serves as the traditional basis of interspousal disability, is not a reference to the common nature or loving oneness achieved in a marriage of two free individuals. Rather, this traditional premise had reference to a situation, coming on from antiquity, in which a woman's marriage for most purposes rendered her a chattel of her husband." *Freehe* v. *Freehe,* 81 Wash. 2d 183, 186 (1972).

of interspousal tort immunity has survived in Massachusetts and in many other jurisdictions. This court could say in 1948 in very broad and dogmatic terms, "That no cause of action arises in favor of either husband or wife for a tort committed by the other during coverture is too well settled to require citation of authority. Recovery is denied in such a case not merely because of the disability of one spouse to sue the other during coverture, but for the more fundamental reason that because of the marital relationship no cause of action ever came into existence." *Callow* v. *Thomas*, 322 Mass. 550, 551-552 (1948). Indeed at that time interspousal immunity was the rule in a substantial majority of jurisdictions. However, in the interim there has been a significant trend in other jurisdictions toward abrogating the doctrine. Currently, State jurisdictions are about evenly divided between those which have abandoned and those which have maintained the interspousal immunity rule. Furthermore, among commentators who have considered the topic, criticism of the rule is practically universal. See, e.g., 1 F. Harper & F. James, *supra* at 643-647; W. Prosser, *supra* at 859-864; McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030 (1930); McCurdy, Personal Injury Torts Between Spouses, 4 Vill. L. Rev. 303 (1959); Comment, Tort Liability Between Husband and Wife: The Interspousal Immunity Doctrine, 21 U. Miami L. Rev. 423 (1966); Note, Interspousal Immunity — Time for a Reappraisal, 27 Ohio St. L.J. 550 (1966).

While most jurisdictions recognize that the theory of the legal identity of husband and wife can no longer support the interspousal immunity rule, those courts which have upheld the rule have generally done so on grounds of public policy. The two arguments most frequently advanced in favor of the rule are, first, that tort actions between husband and wife would tend to disrupt the peace and harmony of the family, and, second, that such actions would tend to promote fraud and collusion on the part of husband and wife for the purpose of reaping an undeserved financial reward at the expense of the family's liability in-

surer. Both of these arguments were considered and rejected in the analogous context of parental immunity in the recent case of *Sorensen* v. *Sorensen,* 369 Mass. 350 (1975), decided this term. We refer to our discussion and resolution of these issues in that case. *Id.* at 359-365. Suffice it to say that just as we did not find the arguments concerning the preservation of family harmony and the avoidance of family fraud sufficient to justify a rule barring tort suits for personal injuries by a child against a parent, we are similarly unconvinced by these arguments in the present context of interspousal immunity. We further note that most of the jurisdictions which have rejected the rule of interspousal immunity have considered these very same arguments and found them wanting. See *Self* v. *Self,* 58 Cal. 2d 683, 689-691 (1962) (intentional torts); *Klein* v. *Klein,* 58 Cal. 2d 692, 694-696 (1962) (negligent torts); *Brooks* v. *Robinson,* 259 Ind. 16, 20-22 (1972); *Rupert* v. *Stienne,* 90 Nev. 397, 401-402 (1974); *Immer* v. *Risko,* 56 N.J. 482, 488-495 (1970); *Flores* v. *Flores,* 84 N.M. 601, 603 (Ct. App. 1973) (intentional torts); *Maestas* v. *Overton,* 87 N.M. 213 (1975) (negligent torts); *Surratt* v. *Thompson,* 212 Va. 191, 192 (1971); *Freehe* v. *Freehe,* 81 Wash. 2d 183, 187-189 (1972).

However, the defendant argues that, unlike the situation prevailing in most other jurisdictions, the rule of interspousal immunity has taken on statutory dimensions in Massachusetts. The argument is based on G. L. c. 209, § 6, as appearing in St. 1963, c. 765, § 2, which provides: "A married woman may sue and be sued in the same manner as if she were sole; *but this section shall not authorize suits between husband and wife* except in connection with contracts entered into pursuant to the authority contained in section two" (emphasis supplied).[2] By including the ital-

---

[2] As to the historical development of G. L. c. 209, § 6, briefly, married women were first given a limited right to sue and be sued in their own names in St. 1845, c. 208, which provided for the separate ownership of property by married women and authorized suits by and against married women "in respect to such property." The first mention of tort actions appears in St. 1871, c. 312, which provided that a married

icized language in the statute, the Legislature, according to the defendant's argument, has chosen to incorporate the rule of interspousal immunity into the statutory law of the Commonwealth and, therefore, this court is without power to abrogate the rule. With this contention we do not agree. The Supreme Court of New Jersey was faced with similar statutory language when called on to reexamine the doctrine of interspousal immunity in *Immer* v. *Risko*, 56 N.J. 482 (1970). New Jersey's Married Persons' Act included the following provision: "Nothing in this chapter contained shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter." N.J. Stat. Ann. tit. 37:2-5 (1968). The court held that this provision did not incorporate the doctrine of interspousal immunity but merely left the common law undisturbed and " 'intact with its inherent capacity for later judicial alteration.' " *Id.* at 486. The court went on to scrutinize the reasons behind the rule of interspousal immunity and abrogated the rule at least with respect to automobile negligence torts.

The Supreme Court of Indiana in abrogating interspousal immunity in the case of *Brooks* v. *Robinson*, 259 Ind. 16 (1972), construed a similar statutory limitation to the same effect, holding that the Legislature was not barring tort actions between husband and wife but was pre-

woman could sue and be sued in tort in the same manner as if she were unmarried but contained no reference to suits by or against her husband. In 1874 the interspousal language we are concerned with in this case was added in substantially the same form as it appears today in G. L. c. 209, § 6. Statute 1874, c. 184, § 3, read: "A married woman may sue and be sued in the same manner and to the same extent as if she were sole, but nothing herein contained shall authorize suits between husband and wife." This statutory language was adopted with minor changes in subsequent consolidations and revisions of the laws of the Commonwealth. See Pub. Sts. (1882), c. 147, § 7; R. L. (1902), c. 153, § 6. Finally, in St. 1963, c. 765, § 2, the Legislature added the language authorizing interspousal suits on contracts entered into pursuant to G. L. c. 209, § 2, which section was simultaneously amended to authorize such contracts (St. 1963, c. 765, § 1) and now reads, "A married woman may make contracts, oral and written, sealed and unsealed, in the same manner as if she were sole, and may make such contracts with her husband."

serving the rule of interspousal immunity in its common law form "subject to amendment, modification, or abrogation by this Court." *Id.* at 24.[3]

With respect to G. L. c. 209, § 6, it was open to the Legislature to take the position that while it did not wish to abolish the common law rule of interspousal immunity neither did it wish to convert the common law rule into a mandate of statutory law. In G. L. c. 209, § 6, it chose apt language to express such an intention. The Legislature apparently recognized the broad scope of the language, "A married woman may sue and be sued in the same manner as if she were sole," and realized that unless some limitirg provision were included the statute itself could be construed as authorizing suits between spouses. By making clear that the statute itself does not alter the rule of interspousal immunity, the Legislature closed the path taken by many courts in other jurisdictions in interpreting the broad, general provisions of their married women's acts as in and of themselves removing the barrier of interspousal immunity. See, e.g., *Katzenberg* v. *Katzenberg,* 183 Ark. 626 (1931); *Lorang* v. *Hays,* 69 Idaho 440 (1949); *Brown* v. *Gosser,* 262 S.W. 2d 480 (Ky. 1953); *Gilman* v. *Gilman,* 78 N.H. 4 (1915); *Wait* v. *Pierce,* 191 Wis. 202 (1926). On the other hand, G. L. c. 209, § 6, does not directly forbid tort suits between husband and wife. The Legislature could have used language more prohibitory in nature had

---

[3] The court in the *Brooks* case was concerned with the following statutory language of TR. 17(D) of the Indiana Rules of Procedure: "Sex, marital and parental status. For the purposes of suing or being sued there shall be *no distinction* between men and women or between men and women because of marital or parental status; *provided, however, that this subsection* (*D*) *shall not apply to actions in tort.*" The court held that this language should not be construed as "anything more than *legislative awareness* of the judicially created doctrine of the common law. The proviso in TR. 17(D) does not purport to abolish tort actions between husband and wife. Rather it merely provides that if any distinction between husband and wife exists in tort actions, such distinction is not removed by the rule as adopted. The 'distinction' which has existed up to the present is, of course, the common law doctrine of interspousal immunity which is, and always has been, subject to amendment, modification, or abrogation by this Court." *Brooks* v. *Robinson, supra* at 23-24 (emphasis in the quoted opinion).

it been its intention to bar such suits; and its choice of the words, "shall not authorize," cannot be considered inadvertent or accidental. Compare with G. L. c. 209, § 6, the Married Women's Property Act of the English Parliament, 45 & 46 Vict., c. 75, § 12 (1882), which provides that "no husband or wife shall be entitled to sue the other for a tort," and Ill. Rev. Stat. c. 68, § 1 (1973), which provides: "A married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried; *provided, that neither husband nor wife may sue the other for a tort to the person committed during coverture*" (emphasis supplied).

In *Frankel* v. *Frankel,* 173 Mass. 214 (1899), holding that the enactment of the statutory language now contained in G. L. c. 209, § 6, did not abolish the equitable remedies previously available between husband and wife, this court noted that "[t]he section referred to above does not forbid suits between husband and wife, but simply provides that it shall not be construed to authorize them." *Id.* at 215. See *Zwick* v. *Goldberg,* 304 Mass. 66, 70 (1939). In addition, in *Gahm* v. *Gahm,* 243 Mass. 374, 375 (1923), a case decided prior to the amendments to G. L. c. 209, §§ 2, 6, contained in St. 1963, c. 765, §§ 1, 2, which authorize contracts between husband and wife and suits on those contracts, the court observed that "[t]he common law disabilities of married women as to the making of contracts have been removed by statute so that they now can contract and sue and be sued in the same manner as if single, subject, however, to the limitation that contracts and suits between husband and wife are not permissible but *stand on the same footing as heretofore*" (emphasis supplied). The "footing" which was the basis of the prohibition of suits between husband and wife "heretofore" was the *common law rule* of interspousal immunity. See *Fowle* v. *Torrey,* 135 Mass. 87, 89-90 (1883). The "shall not authorize" language of G. L. c. 209, § 6, would appear then to be a reference to, not an incorporation of, the common law rule of interspousal immunity. We conclude that the statute has left the rule in its common law status

susceptible to reexamination and alteration by this court.

The defendant further argues that even if interspousal immunity is not mandated by statute, a common law rule of such long standing should be abolished, if at all, by legislative and not judicial action. The defendant concedes, as he must, that it is within the power and authority of the court to abrogate this judicially created rule; and the mere longevity of the rule does not by itself provide cause for us to stay our hand if to perpetuate the rule would be to perpetuate inequity. When the rationales which gave meaning and coherence to a judicially created rule are no longer vital, and the rule itself is not consonant with the needs of contemporary society, a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula. Chief Justice Vanderbilt described this interaction between the judiciary and the evolving common law in an oft cited passage from *State* v. *Culver*, 23 N.J. 495, 505, cert. denied, 354 U.S. 925 (1957): "One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his Interpretations of Legal History (1922) when he stated, 'Law must be stable, and yet it cannot stand still.' "

This court has frequently had occasion to effect through its decisions not insignificant changes in the field of tort law. See, e.g., *Sorensen* v. *Sorensen*, 369 Mass. 350 (1975); *Mone* v. *Greyhound Lines, Inc.*, 368 Mass. 354 (1975); *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153 (1973), and cases

cited at 166 n.43. In the *Diaz* case, in rejecting the argument that the court should defer to the Legislature on the question of recovery for loss of consortium, we noted that "the Legislature may rationally prefer to act, if it acts at all, after rather than before the common law has fulfilled itself in its own way." *Id.* at 166. We are of opinion that this is an especially appropriate comment in the context of this case where the Legislature in G. L. c. 209, § 6, has recognized the rule of interspousal immunity but has left the rule in its common law form, expressing the preference, at least implicitly, that this court continue to evaluate the usefulness and propriety of the rule. We further note that the argument that any change in the doctrine of interspousal immunity should come from the Legislature, not the judiciary, has been considered and rejected in many decisions abrogating the common law rule. See, e.g., *Brooks* v. *Robinson,* 259 Ind. 16, 22-23 (1972) ; *Beaudette* v. *Frana,* 285 Minn. 366, 370-371 (1969) ; *Rupert* v. *Stienne,* 90 Nev. 397, 399-401 (1974) ; *Immer* v. *Risko,* 56 N.J. 482, 487 (1970) ; *Flores* v. *Flores,* 84 N.M. 601, 603-604 (Ct. App. 1973) ; *Freehe* v. *Freehe,* 81 Wash. 2d 183, 189 (1972).

We conclude therefore that it is open to this court to reconsider the common law rule of interspousal immunity and, having done so, we are of opinion that it should no longer bar an action by one spouse against another in a case such as the present one. We believe this result is consistent with the general principle that if there is tortious injury there should be recovery, and only strong arguments of public policy should justify a judicially created immunity for tortfeasors and bar to recovery for injured victims. See *Morash & Sons* v. *Commonwealth,* 363 Mass. 612, 621 (1973) ; *Freehe* v. *Freehe, supra* at 192. We have examined the reasons offered in support of the common law immunity doctrine and, whatever their vitality in the social context of generations past, we find them inadequate today to support a general rule of interspousal tort immunity. In arriving at this conclusion we are mindful that the rights and privileges of husbands and wives with respect to one another are not unaffected by the marriage

they have voluntarily undertaken together. Conduct, tortious between two strangers, may not be tortious between spouses because of the mutual concessions implied in the marital relationship. For this reason we limit our holding today to claims arising out of motor vehicle accidents. Further definition of the scope of the new rule of interspousal tort liability will await development in future cases.[4]

It follows that the motion for summary judgment should not have been allowed and that the judgment is to be vacated.

*So ordered.*

---

[4] In *Sorensen* v. *Sorensen,* 369 Mass. 350, 352-353 (1975), in abrogating parental immunity in automobile tort cases we limited the liability to the extent of the parent's automobile liability insurance coverage. In the present case there is nothing in the record concerning the availability or the amount of the defendant's liability insurance, and we do not refer to insurance as a limiting factor in our holding. We do not interpret the logic (as opposed to the precise holding) of *Sorensen* as turning on the availability of insurance in each case, and we decline to limit liability in interspousal tort actions in such a fashion.