ROBERT T. NOGUEIRA vs. LINDA M. NOGUEIRA.

Bristol. November 4, 1982. — January 26, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Husband and Wife*, Interspousal immunity. *Actionable Tort. Public Policy.*

The common law doctrine of interspousal immunity did not bar an action by a husband against his wife for libel and intentional infliction of emotional distress based on a letter she wrote four days after the entry of their judgment of divorce nisi. [80-82]

CIVIL ACTION commenced in the Superior Court Department on September 21, 1981.

The case was heard by *Taveira*, J., on motion for summary judgment.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Alan A. Amaral* for Robert T. Nogueira.

*Ben D. Lewis* for Linda M. Nogueira.

LYNCH, J. This case concerns the continued vitality of the doctrine of interspousal immunity in an action by one spouse against another for injuries caused by torts committed by the other spouse after the entry of a judgment of divorce nisi. The plaintiff, Robert T. Nogueira, instituted suit on September 21, 1981, against his wife, Linda M. Nogueira, for the torts of libel and intentional infliction of emotional distress she allegedly committed against him four days after the entry of their judgment of divorce nisi. She moved for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), on the grounds that the pleadings and affidavits submitted revealed no genuine issue of material fact and that she was entitled to a judgment as a matter of law based on the common law doctrine of interspousal im-

munity. The judge allowed this motion and dismissed the complaint. The plaintiff appealed to the Appeals Court. We transferred the case to this court on our own motion. We conclude that there is no reason to apply this common law doctrine to bar actions for intentional torts committed after the marital relationship has been provisionally severed by the entry of a judgment nisi. Accordingly, we rule that the interspousal immunity doctrine is not a bar in the present suit.

We summarize the facts from the pleadings and the affidavits submitted to the judge. The Nogueiras were married on September 7, 1973. Subsequently, Linda Nogueira initiated a divorce proceeding against her husband in the Probate Court for Bristol County and that court entered a judgment of divorce nisi on August 24, 1981. On August 28, 1981, Linda Nogueira composed and published a letter to General Vahan Vartanian and sent a copy of this letter to Colonel F. J. D'Amore, both of the Massachusetts National Guard (Guard). Robert Nogueira was then a captain in the Guard. General Vartanian was at that time the commanding officer of the Guard and D'Amore was Robert Nogueira's battalion commander.

In her letter, Linda Nogueira stated that the plaintiff had a "serious drinking problem and may have psychological problems as well." The letter further accused the plaintiff of being intoxicated on April 28, 1981, attempting to smother her with a pillow, and restraining her from calling for help. The defendant admits that she wrote the letter, but she argues that her husband's suit against her is barred by this court's decision in *Lewis* v. *Lewis*, 370 Mass. 619 (1976).

In *Lewis*, we recognized that the "antediluvian assumptions concerning the role and status of women in marriage and in society which animated and gave support to the common law rule of interspousal immunity" had become inconsistent with evolving societal realities. *Lewis, supra* at 621-622. The precise holding in *Lewis* was limited "to claims arising out of motor vehicle accidents," *id.* at 630, but contrary to the defendant's argument here, the court specifically

disclaimed any reliance on "the availability or the amount of the defendant's liability insurance . . . as a limiting factor in our holding." *Id.* at 630 n.4. Rather, the court concluded that "[f]urther definition of the scope of the new rule of interspousal tort liability will await development in future cases." *Lewis, supra* at 630.

This court further limited the scope of the interspousal immunity doctrine in *Brown* v. *Brown,* 381 Mass. 231 (1980). There, the court quoted with approval from the decision of the Supreme Court of New Jersey in *Merenoff* v. *Merenoff,* 76 N.J. 535, 557 (1978): "'[W]e recognize that there still remain situations wherein, as a matter of law or fact, claims for personal injuries between married persons will not justify a recovery of damages. We hold that, subject to these excepted areas which are best left to be defined and developed on a case-by-case basis, there presently exists no cogent or logical reason why the doctrine of interspousal tort immunity should be continued and it is hereby abrogated as a bar to a civil suit between married persons for damages for personal injuries.' . . . The court went on to point out that the asserted tortious behavior in the cases before it did 'not trench remotely upon the privileged or consensual aspects of married life.' *Id.*" *Brown, supra* at 233. Clearly tortious behavior that occurs after the entry of a judgment nisi does not affect the privileged or consensual aspects of married life. Cf. *Commonwealth* v. *Chretien,* 383 Mass. 123, 133 (1981) (entry of judgment of divorce nisi provided defendant with fair warning that a wife's implied consent to marital intercourse is revoked, making it fair to apply rape statutes to him).

In our decision in *Lewis,* we noted that the holding there was "consistent with the general principle that if there is tortious injury there should be recovery, and only strong arguments of public policy should justify a judicially created immunity for tortfeasors and bar to recovery for injured victims." *Lewis, supra* at 629. The chief public policy reason relied on by most courts for preservation of the doctrine of interspousal tort immunity is the belief that personal tort

actions between a husband and wife would disrupt the peace and harmony of the marital home. See W. Prosser, Torts § 122, at 863 (4th ed. 1971). See also *Freehe* v. *Freehe,* 81 Wash. 2d 183, 187 (1972); *Self* v. *Self,* 58 Cal. 2d 683, 686 (1962). The *Lewis* court examined this reason in its analysis of the policy behind the doctrine and concluded that it was "unconvinced by [this argument] in the present context of interspousal immunity." *Lewis, supra* at 624.

In this case nothing but the shell of the marital relationship remained at the time the torts were allegedly committed. As the Supreme Court of the State of Washington stated in a similar situation where the marriage had so deteriorated,[1] "we find no justification . . . for determining the legal rights of the parties as if nothing had ever happened to interrupt their marital relations. To do otherwise is to ignore the realities of the situation and indulge in a fanciful assumption, which is contrary to the facts alleged in the . . . complaint." *Goode* v. *Martinis,* 58 Wash. 2d 229, 235 (1961).

Although we recognize that the entry of the judgment of divorce nisi does not yet finally terminate the marriage, *Ross* v. *Ross,* 385 Mass. 30, 35 (1982), *Pine* v. *Pine,* 323 Mass. 524, 525 (1948), G. L. c. 208, § 21, we decline to indulge "in a fanciful assumption" that any marital harmony remains which requires invocation of interspousal tort immunity. Here, the divorce decree had been entered and the parties were only waiting for the passage of the statutorily mandated six-month period for the divorce judgment to ripen into a final decree. G. L. c. 208, § 21. Further, as this litigation amply demonstrates, any harmony and peacefulness in this marriage has long since been destroyed.

The summary judgment is reversed, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*

---

[1] In that case, the wife had commenced a divorce action and was then awaiting trial when her husband allegedly assaulted her.