THERESA BRUNE & another *vs.* STANTON BELINKOFF.

Bristol.    January 4, 1968. — April 3, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Doctor.   Negligence, Doctor.*

Discussion of the "community" or "locality" rule in relation to the
standard of care and skill required of medical practitioners.  [104–108]
In an action for malpractice against a specialist in anesthesiology prac-
tising in the city of New Bedford, an instruction to the jury, that
the defendant was to be held only to "the standard of professional
care and skill ordinarily possessed by others in his profession in . . .
New Bedford, and its environs, . . . having regard to the current
state of advance of the profession," was error; *Small* v. *Howard,* 128
Mass. 131, overruled.  [108]
A general medical practitioner is to be held to the standard of care and
skill of the average qualified practitioner, and a medical specialist is
to be held to the standard of care and skill of the average practitioner
of the specialty, taking into account with respect to either the general
practitioner or the specialist the advances in the profession and the
medical resources available to him.  [109]
At the trial of an action against a specialist in anesthesiology for mal-
practice respecting the dosage of pontocaine used by the defendant
in administering a spinal anesthetic to the plaintiff, where there was
conflicting medical evidence as to the propriety of not following a
recommendation for the dosage contained in a brochure published by
the manufacturer of the pontocaine, there was no error in a refusal of
the judge to give an instruction requested by the plaintiff that a fail-
ure of the defendant to follow "the instructions" of the manufacturer
in the use of pontocaine was evidence of negligence.  [109–110]

TORT.   Writ in the Superior Court dated September 26,
1960.

The action was tried before *Good,* J.

*Meyer H. Goldman* (*Solomon Rosenberg & George H. Young*
with him) for the plaintiffs.

*William J. Fenton* for the defendant.

SPALDING, J.   In this action of tort for malpractice Theresa
Brune (plaintiff) seeks to recover from the defendant be-
cause of alleged negligence in administering a spinal anes-
thetic.   There is a count by the plaintiff's husband for con-

sequential damages. The jury returned verdicts for the defendant on each count. The case comes here on the plaintiffs' exceptions to the judge's refusal to grant certain requests for instructions, to portions of the charge, and to the denial of the plaintiffs' motion for a new trial.

The plaintiff was delivered of a baby on October 4, 1958, at St. Luke's Hospital in New Bedford. During the delivery, the defendant, a specialist in anesthesiology practising in New Bedford, administered a spinal anesthetic to the plaintiff containing eight milligrams of pontocaine in one cubic centimeter of ten per cent solution of glucose. When the plaintiff attempted to get out of bed eleven hours later, she slipped and fell on the floor. The plaintiff subsequently complained of numbness and weakness in her left leg, an affliction which appears to have persisted to the time of trial.

Testimony was given by eight physicians. Much of it related to the plaintiff's condition. There was ample evidence that her condition resulted from an excessive dosage of pontocaine.

There was medical evidence that the dosage of eight milligrams of pontocaine was excessive and that good medical practice required a dosage of five milligrams or less. There was also medical evidence, including testimony of the defendant, to the effect that a dosage of eight milligrams in one cubic centimeter of ten per cent dextrose was proper. There was evidence that this dosage was customary in New Bedford in a case, as here, of a vaginal delivery.[1]

1. The plaintiffs' exception to the refusal to give their first request for instruction and their exception to a portion of the charge present substantially the same question and will be considered together. The request reads: "As a specialist, the defendant owed the plaintiff the duty to have and use the care and skill commonly possessed and used by similar specialist[s] in like circumstances." The relevant

---

[1] The defendant testified that such variations as there were in the dosages administered in Boston and New York, as distinct from New Bedford, were due to differences in obstetrical technique. The New Bedford obstetricians use suprafundi pressure (pressure applied to the uterus during delivery) which "requires a higher level of anesthesia."

Brune *v.* Belinkoff.

portion of the charge excepted to was as follows: "[The defendant] must measure up to the standard of professional care and skill ordinarily possessed by others in his profession in the community, which is New Bedford, and its environs, of course, where he practices, having regard to the current state of advance of the profession. If, in a given case, it were determined by a jury that the ability and skill of the physician in New Bedford were fifty percent inferior to that which existed in Boston, a defendant in New Bedford would be required to measure up to the standard of skill and competence and ability that is ordinarily found by physicians in New Bedford."

The basic issue raised by the exceptions to the charge and to the refused request is whether the defendant was to be judged by the standard of doctors practising in New Bedford.

The instruction given to the jury was based on the rule, often called the "community" or "locality" rule first enunciated in *Small* v. *Howard*, 128 Mass. 131, a case decided in 1880. There the defendant, a general practitioner in a country town with a population of 2,500, was consulted by the plaintiff to treat a severe wound which required a considerable degree of surgical skill. In an action against the defendant for malpractice this court defined his duty as follows: "It is a matter of common knowledge that a physician in a small country village does not usually make a specialty of surgery, and, however well informed he may be in the theory of all parts of his profession, he would, generally speaking, be but seldom called upon as a surgeon to perform difficult operations. He would have but few opportunities of observation and practice in that line such as public hospitals or large cities would afford. The defendant was applied to, being the practitioner in a small village, and we think it was correct to rule that 'he was bound to possess that skill only which physicians and surgeons of ordinary ability and skill, practising in similar localities, with opportunities for no larger experience, ordinarily possess; and he was not bound to possess that high degree of art and skill possessed by eminent surgeons practising in large cities, and

making a specialty of the practice of surgery.'" The rule in *Small* v. *Howard* has been followed and applied in a long line of cases, some of which are quite recent. *Ernen* v. *Crofwell*, 272 Mass. 172, 175. *Bouffard* v. *Canby*, 292 Mass. 305, 309. *Vigneault* v. *Dr. Hewson Dental Co.* 300. Mass. 223, 225. *Berardi* v. *Menicks*, 340 Mass. 396, 400. *Ramsland* v. *Shaw*, 341 Mass. 56, 61. *Riggs* v. *Christie*, 342 Mass. 402, 405–406. *Delaney* v. *Rosenthall*, 347 Mass. 143, 146. Although in some of the later decisions the court has said that the doctor must exercise the care prevailing in "the locality where he practiced" it is doubtful if the court intended to narrow the rule in *Small* v. *Howard* where the expression "similar localities" was used.[2]

The rationale of the rule of *Small* v. *Howard* is that a physician in a small or rural community will lack opportunities to keep abreast with the advances in the profession and that he will not have the most modern facilities for treating his patients. Thus, it is unfair to hold the country doctor to the standard of doctors practising in large cities. The plaintiffs earnestly contend that distinctions based on geography are no longer valid in view of modern developments in transportation, communication and medical education, all of which tend to promote a certain degree of standardization within the profession. Hence, the plaintiffs urge that the rule laid down in *Small* v. *Howard* almost ninety years ago now be reëxamined in the light of contemporary conditions.

The "community" or "locality" rule has been modified in several jurisdictions and has been subject to critical comment in legal periodicals.[3]

One approach, in jurisdictions where the "same community rule" obtains, has been to extend the geographical area which

---

[2] For a general collection of cases dealing with the community or locality rule, see Annotation, 8 A. L. R. 2d 772.

[3] See note, 14 Stanford L. Rev. 884; note 36 Iowa L. Rev. 681; note, 35 Minn. L. Rev. 186, 190; note, 60 Northwestern L. Rev. 834, 837; note, 36 Marquette L. Rev. 392; McCoid, The Care Required of Medical Practitioners, 12 Vanderbilt L. Rev. 549, 569 et. seq. See also Prosser, Torts (3d ed.) § 32 (pp. 166–167).

constitutes the community. The question arises not only in situations involving the standard of care and skill to be exercised by the doctor who is being sued for malpractice, but also in the somewhat analogous situations concerning the qualifications of a medical expert to testify. See *Sampson v. Veenboer*, 252 Mich. 660, 666–667 (expert from another State permitted to testify as to standards in Grand Rapids, in view of evidence that he was familiar with standards in similar localities). In Connecticut which has the "same locality rule," it was said by the Supreme Court of Errors, "Our rule does not restrict the territorial limitation to the confines of the town or city in which the treatment was rendered, and under modern conditions there is perhaps less reason than formerly for such restriction. There is now no lack of opportunity for the physician or surgeon in smaller communities to keep abreast of the advances made in his profession, and to be familiar with the latest methods and practices adopted. It is not unreasonable to require that he have and exercise the skill of physicians and surgeons in similar localities in the same general neighborhood. It may not be sufficient if he exercise only that degree of skill possessed by other practitioners in the community in which he lives." *Geraty v. Kaufman*, 115 Conn. 563, 573–574.

Other courts have emphasized such factors as accessibility to medical facilities and experience. See *Tvedt v. Haugen*, 70 N. D. 338, where the defendant doctor recognized that the plaintiff's injury required the care of a specialist but failed to call this to the attention of the plaintiff. The court said at p. 349: "The duty of a doctor to his patient is measured by conditions as they exist, and not by what they have been in the past or may be in the future. Today, with the rapid methods of transportation and easy means of communication, the horizons have been widened, and the duty of a doctor is not fulfilled merely by utilizing the means at hand in the particular village where he is practicing. So far as medical treatment is concerned, the borders of the locality and community have, in effect, been extended so as to include those centers readily accessible where appropriate

treatment may be had which the local physician, because of limited facilities or training, is unable to give." And in *Cavallaro* v. *Sharp*, 84 R. I. 67, a medical expert formerly of Philadelphia was allowed to testify as to required degree of care in Providence, the court saying at page 72, "The two localities cannot be deemed so dissimilar as to preclude an assumption that mastoidectomies are performed by otologists in Providence with the same average degree of careful and skillful technique as in Philadelphia. It is to be remembered in this connection that Providence is not a small city but is the metropolitan center of upwards of a million people, and moreover is in reasonable proximity to Boston, one of the principal medical centers of the country."

Other decisions have adopted a standard of reasonable care and allow the locality to be taken into account as one of the circumstances, but not as an absolute limit upon the skill required. See *McGulpin* v. *Bessmer*, 241 Iowa, 1119; *Viita* v. *Fleming*, 132 Minn. 128, 135–137. In the case last cited the court said at page 137, "Frequent meetings of medical societies, articles in the medical journals, books by acknowledged authorities, and extensive experience in hospital work, put the country doctor on more equal terms with his city brother. . . . [W]e are unwilling to hold that he is to be judged only by the qualifications that others in the same village or similar villages possess."

Recently the Supreme Court of Washington (sitting en banc) virtually abandoned the "locality" rule in *Pederson* v. *Dumouchel*, 72 Wash. 2d 73. There the trial judge charged that the defendant doctor was required to exercise the care and skill of others in the same or similar localities. This instruction, on appeal, was held to be erroneous. In the course of its well reasoned opinion the court said, "The 'locality rule' has no present-day vitality except that it may be considered as *one* of the elements to determine the degree of care and skill which is to be expected of the average practitioner of the class to which he belongs. The degree of care which must be observed is, of course, that of an average, competent practitioner acting in the same or similar cir-

cumstances.  In other words, local practice within geo-
graphic proximity is one, but not the only factor to be con-
sidered.  No longer is it proper to limit the definition of the
standard of care which a medical doctor or dentist must meet
solely to the practice or custom of a particular locality, a
similar locality, or a geographic area."  In another recent
case the Supreme Court of Appeals of West Virginia criticised
the "locality" rule and appears to have abandoned it in the
case of specialists.  *Hundley* v. *Martinez*, 151 W. Va. 977.

In cases involving specialists the Supreme Court of New
Jersey has abandoned the "locality" rule.  See *Carbone* v.
*Warburton*, 11 N. J. 418, where it was said at page 426,
"'[O]ne who holds himself out as a specialist must employ
not merely the skill of a general practitioner, but also the
special degree of skill normally possessed by the average
physician who devotes special study and attention to the
particular organ or disease or injury involved, having regard
to the present state of scientific knowledge.'"[4]

Because of the importance of the subject, and the fact
that we have been asked to abandon the "locality" rule we
have reviewed the relevant decisions at some length.  We
are of opinion that the "locality" rule of *Small* v. *Howard*
which measures a physician's conduct by the standards of
other doctors in similar communities is unsuited to present
day conditions.  The time has come when the medical pro-
fession should no longer be Balkanized by the application
of varying geographic standards in malpractice cases.  Ac-
cordingly, *Small* v. *Howard* is hereby overruled.  The present
case affords a good illustration of the inappropriateness of
the "locality" rule to existing conditions.  The defendant
was a specialist practising in New Bedford, a city of 100,000,
which is slightly more than fifty miles from Boston, one of
the medical centers of the nation, if not the world.  This is
a far cry from the country doctor in *Small* v. *Howard*, who
ninety years ago was called upon to perform difficult surgery.

---

[4] The decreasing importance of local communities in relation to the quali-
fication of real estate experts was discussed by this court in *Muzi* v. *Com-
monwealth*, 335 Mass. 101, 105–106.

Yet the trial judge told the jury that if the skill and ability of New Bedford physicians were "fifty percent inferior" to those obtaining in Boston the defendant should be judged by New Bedford standards, "having regard to the current state of advance of the profession." This may well be carrying the rule of *Small* v. *Howard* to its logical conclusion, but it is, we submit, a reductio ad absurdum of the rule.

The proper standard is whether the physician, if a general practitioner, has exercised the degree of care and skill of the average qualified practitioner, taking into account the advances in the profession. In applying this standard it is permissible to consider the medical resources available to the physician as *one* circumstance in determining the skill and care required. Under this standard some allowance is thus made for the type of community in which the physician carries on his practice. See Prosser, Torts (3d ed.) § 32 (pp. 166–167); compare Restatement 2d: Torts, § 299A, comment g.

One holding himself out as a specialist should be held to the standard of care and skill of the average member of the profession practising the specialty, taking into account the advances in the profession. And, as in the case of the general practitioner, it is permissible to consider the medical resources available to him.

Because the instructions permitted the jury to judge the defendant's conduct against a standard that has now been determined to be incorrect, the plaintiffs' exceptions to the charge and to the refusal of his request must be sustained.

2. The plaintiffs excepted to the refusal of the judge to give certain other requests for instructions. Of these we shall deal with only the eleventh, as the others are not likely to arise on a retrial of the case.[5] The ruling arose in this setting. There was evidence that in a brochure published by the manufacturers of pontocaine the use of two to five milligrams in dextrose was recommended for a vaginal

---

[5] The eleventh request was: "The failure of the defendant to follow the instructions of the manufacturer in the use of Pontocaine is evidence of negligence."

(saddle block) delivery, and the defendant testified that he was familiar with the contents of this brochure. There was medical evidence that it was good medical practice to follow the recommendations of the manufacturer with respect to dosages for spinal anesthetics. There was, however, testimony by an anesthesiologist that the recommendations contained in the brochure were "intended as a guide to physicians, not to anesthesiologists." In support of their request the plaintiffs invoke the decisions holding that a violation of a rule previously adopted by a defendant in relation to the safety of third persons is admissible as tending to show negligence of the defendant's disobedient servant. *Stevens* v. *Boston Elev. Ry.* 184 Mass. 476. We think that this principle has no application here. The statement concerning dosages in the brochure was quite different from the rule adopted for the safety of third persons in the *Stevens* case. It was no more than a recommendation, and there was a difference of opinion among the anesthesiologists as to whether the failure to follow it was improper practice. The judge rightly refused to give the requested instruction.

*Exceptions sustained.*