Ti-Yuan Shu v. Eisenklam.

Ti-Yuan Shu, individually and as administrator, &
another[1] vs. Eric J. Eisenklam & another.[2]

No. 90-P-1092.

Middlesex. January 7, 1992. - February 10, 1992.

Present: Kass, Smith, & Gillerman, JJ.

*Medical Malpractice*, Standard of care. *Negligence*, Doctor. *Practice,
Civil*, Instructions to jury.

At the trial of a malpractice action against a pediatrician, arising out of
the death of the plaintiffs' minor child, it was error requiring reversal
for the judge to instruct the jury so as to direct their attention to what
the defendant reasonably believed the parents would do after a late
night telephone conversation between him and the child's mother,
thereby withdrawing from the jury's consideration the theory advanced
by the plaintiffs' expert witness, namely, that the defendant negligently
failed to make sure that the plaintiffs understood the urgent need to
take their child to a hospital. [95-96]

Civil action commenced in the Superior Court Depart-
ment on June 16, 1986.

The case was tried before *Hiller B. Zobel*, J.

*Steven L. Hoffman* (*Valerie A. Yarashus* with him) for
the plaintiffs.

*John D. Cassidy* for the defendant.

Gillerman, J. This action for wrongful death, conscious
pain and suffering, loss of consortium, and consequential
damages arose out of the alleged medical malpractice of the
defendant Eisenklam, a pediatrician on call the night of De-
cember 1, 1984. The plaintiffs allege that the defendant's

[1] Shin Lee, the wife of Ti-yuan Shu, and the mother of the decedent
David Jinwei Shu.

[2] Medical Associates. The parties stipulated that, if the plaintiffs
obtained a money judgment against the defendant Eisenklam, judgment
will also be entered against the defendant Medical Associates. References
in this opinion to "the defendant" are to the defendant Eisenklam.

negligence caused the death of their minor son, David. There was a five-day trial to a jury who, in answer to special questions, found that the defendant was not negligent. Judgments entered for the defendants, the plaintiffs' motion for a new trial was denied, and they have appealed.

The only issue on appeal is whether the trial judge erred in his instructions to the jury. We conclude that he did and that the judgments must be reversed.

The plaintiffs' theory of negligence is that the defendant, in a telephone conversation with David's mother at about 10 P.M. on December 1, 1984, negligently failed to make sure that David's parents understood the urgent need to take their son to a hospital. The result was, the plaintiffs claim, that they did not go to the hospital until the following morning, by which time David had died of dehydration.

The events leading up to the telephone conversation between the defendant and the mother are not in dispute. Beginning on Wednesday, November 28, 1984, David experienced episodes of diarrhea, vomiting, and fever. He was diagnosed on November 30 by a Dr. Gilchrist as having an ear infection, and antibiotics were prescribed. At about 6 P.M. on the same day, David began vomiting again, and Dr. Roseman, the physician on call, instructed the mother to give David a spoonful of liquid every fifteen minutes because he could not hold large amounts of liquid. On Saturday, December 1, the parents reported that David had no fever, had stopped vomiting, and his diarrhea had decreased. However, by 10 P.M. David began trembling and shaking and he continued to have diarrhea. The parents decided to take David to the hospital. Before doing so, the mother spoke by telephone to the defendant, the physician on call that night.

According to the plaintiffs, the mother and the defendant talked for about ten minutes. The mother described David's symptoms and the history of his care. She told the defendant that David "really looks frightening." The defendant replied that David's condition "really sounds fine," and, when asked by the mother whether David should be taken to the hospital, the defendant replied, "I don't think so. Only if you really

want to, Lowell General." The plaintiffs did not take David to the hospital that evening. David died sometime between 3 A.M. and 6 A.M.

The defendant's testimony with regard to the telephone conversation was markedly different. According to a memorandum he made on December 27, 1984, following receipt of a letter from an attorney representing the plaintiffs, the defendant was told that David was listless and shivering but that the fever and vomiting had improved. The parents asked whether David should be taken to the hospital, and, the memorandum continues, "I replied that I thought he should. They asked which hospital. I answered 'Lowell General.' I had no further contact with parents or hospital regarding this child." On examination by his own counsel, the defendant testified that he was told by the mother that "she wanted to take the child to the hospital. And I said that she should if that's what she wanted to do." The defendant admitted that at the end of the telephone conversation he had not come to "any conclusion at all" about David's condition. Further on, he explained: "I believed that they were going to the hospital, so I didn't think there was a need to ask any more questions."

The plaintiffs' expert witness, Chester M. Edelmann, Jr., M.D., testified that the defendant "did not follow the accepted standard of care in the management of David . . .," because the "appropriate questions" had not been asked by the defendant, and, if they had been asked, "it would have been determined that David was acutely ill, needed to be seen urgently, and [the parents] would have been directed to take him immediately to the hospital . . . and following that direction, . . . [the defendant was obliged] to make sure the parents agreed and were prepared to follow those instructions." Dr. Edelmann added that the defendant's failure to determine whether there was a problem requiring immediate medical attention placed the defendant out of compliance with the appropriate standard of care.

The defendant's expert witness, Jerome Klein, M.D., testified that the defendant complied with the standard of care of

the average treating pediatrician on December 1, 1984. Dr. Klein reached that conclusion on the assumption that the mother told the defendant that she wanted to take David to the hospital because she was worried and that the defendant replied, "You should go to the emergency room . . . [at] Lowell General Hospital." Dr. Klein explained that "the child was going through what would be expected for resolving . . . [the ear infection] accompanied by vomiting and diarrhea" and that it was "perfectly appropriate" for the defendant to accede to the parents' request that they bring David to the hospital.

The judge's instructions to the jury included detailed comments on the issue of negligence. Midway in that discussion the judge said, "The question is, has the plaintiff [*sic*] shown that the defendant did not meet the standard of care and professional competence of the average pediatrician?" Further on, however, the judge added the following language, to which the plaintiffs made a timely and focused objection:

> "You may take into account the evidence with respect to the whole circumstances of the conversation. What the doctor knew, what the doctor inquired of, and what he didn't inquire of. You may take all of that into account. *As the case had been presented to you, it's very clear that the central issue, with respect to negligence, is simply this: At the close of the conversation, did Dr. Eisenklam believe that the parents were going to go to the hospital with the child? And if he did believe that, was he reasonable in having that belief?*" (Emphasis added.)

The language added by the judge did not correctly state the issues confronting the jury. First, they had to determine what was said between the mother and the defendant in the telephone conversation of December 1, and, second, they had to determine whether, based on that conversation, the defendant's conduct complied with the standard of care of an average pediatrician in 1984. *Brune* v. *Belinkoff*, 354 Mass. 102 (1968). Those two issues could not be collapsed into the

single issue of whether, at the close of the telephone conversation, the defendant reasonably believed that the plaintiffs were going to the hospital with David. The judge, by directing the attention of the jury to what the defendant might reasonably believe was going to happen, withdrew from the jury's consideration the permissible finding that the defendant negligently failed to instruct the plaintiffs — as he should have, according to Dr. Edelmann — that it was urgent that David be taken to the hospital.

The difference in this case was decisive to the outcome: if the only issue was as the judge expressed it, then the plaintiffs' failure to take David to the hospital, following the telephone conversation with the defendant, would be the product of their own decision, thereby absolving the defendant; but if the issue was as expressed by the plaintiffs' expert, then the failure of the plaintiffs to take David to the hospital, following the telephone conversation, could be attributed to the failure of the defendant to comply with the appropriate standard of care.

The plaintiffs were entitled to instructions which permitted the jury to consider the testimony presented by their witnesses, and instructions which foreclosed that possibility worked a deprivation of the substantial rights of the plaintiffs. There must be a new trial.

*Judgments reversed.*