LAILA ROUKOUNAKIS *vs.* RONALD J. MESSER & another.[1]

No. 04-P-191.

Plymouth. March 7, 2005. - May 9, 2005.

Present: GREENBERG, DREBEN, & GREEN, JJ.

*Negligence,* Doctor. *Doctor,* Duty to disclose risk.

In a civil action for medical negligence involving undetected breast cancer in which the jury found for the defendant radiologist, the judge properly refused to charge the jury on the claim that the defendant failed to obtain the plaintiff's informed consent as to a course of treatment following a mammogram, where, under the circumstances of the case, the question of informed consent could not be separated from the question of negligence, i.e., the jury would have had to find substantially the same facts for a claim of failure to inform as they would have had to find in order to determine the defendant negligent — that he failed to recognize on the plaintiff's mammogram what the average qualified readiologist should have recognized. [483-487]

CIVIL ACTION commenced in the Superior Court Department on July 10, 1996.

The case was tried before *Raymond J. Brassard,* J.

*Elton Watkins, III,* for the plaintiff.

*Michael F. Conway* for Ronald J. Messer.

*Douglas N. Perlo,* for Scituate-Hyannis Imaging, Inc., was present but did not argue.

DREBEN, J. The plaintiff, Laila Roukounakis, had a routine mammogram in February, 1993, and was told, after additional x-ray films were taken, that the mammogram was normal. About ten months later, in December, 1993, she began feeling fatigued and felt a nagging sensation in her left breast. She developed a tender area in her left breast in February, 1994, and consulted her primary care physician, who arranged for another mam-

---

[1]Scituate-Hyannis Imaging, Inc. The corporation was sued on the ground that it was vicariously liable for Dr. Messer's actions.

mogram. The mammogram revealed a suspicious mass; an ultrasound was performed. A subsequent surgical biopsy showed a mass of four to five centimeters. The plaintiff underwent a mastectomy; four lymph nodes proved to be cancerous and she was treated with chemotherapy.

At some point during her treatment, she obtained the films from the 1993 mammogram and discovered that the report noted a "questionable nodular area" in her left breast. This action followed, the plaintiff alleging, among other claims, that Dr. Ronald Messer, the radiologist who had read her films in 1993, had been negligent in failing to diagnose her cancer and had also failed to obtain her informed consent, that is, he had not disclosed to her all significant medical information material for her to make an intelligent decision. See *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. 152, 156 (1982). After a trial, the jury found him not to have been negligent and judgment entered for the defendants.

The focus of this appeal is the judge's refusal to charge on informed consent. We affirm.

At trial, a medical oncologist called by the plaintiff testified that a biopsy in 1993 would have shown cancer, and had the cancer been diagnosed, the plaintiff would have had a markedly improved chance for survival and cure with no lymph node involvement. Another expert for the plaintiff, a radiologist, testified that the area noted to be questionable in the 1993 mammogram required further investigation. In his view, the 1993 film showed an abnormal area which was cancerous until proved otherwise and required further workup.

He also discussed the information he considered a patient should receive: "When you find an abnormality in the breast that you cannot exclude carcinoma as being the cause of the abnormality, then you're obligated to tell the patient that." On cross-examination, however, he stated that if a radiologist did not believe there was anything suspicious, there was no reason for an ultrasound or biopsy. He also agreed that if the radiologist concludes that there is no evidence of malignancy, he would expect the report to so state.

Dr. Messer testified that it is commonplace to see things on one view of a mammogram and that five or six times a day

he orders additional films. When he circled the area on the MLO (median lateral oblique) view of the 1993 mammogram, he did not think the area was suspicious for cancer, but thought it was more likely a compression artifact.[2] After he ordered a spot compression film, the area on the film "thinned out." This meant that the questionable nodular area was a compression artifact with "no clinical significance," and that, in Dr. Messer's view, "nothing [was] there."

At the charge conference, the trial judge, relying on *Precourt v. Frederick*, 395 Mass. 689 (1985), ruled that an informed consent claim had not been made out and refused the plaintiff's request to give an instruction regarding that issue. Had Dr. Messer acknowledged that there was some doubt about the mammogram, the judge suggested that he might have allowed the question of informed consent to go to the jury. But here, weighing the need for accommodation of the plaintiff's right to know, fairness to the physician, and society's interest that medicine be practiced without unrealistic or unnecessary burdens being placed on practitioners, see *id.* at 697, he would not permit jury consideration of the issue.

The judge was correct both on factual and on legal grounds. While the plaintiff's expert radiologist testified that the failure to inform the plaintiff and to offer her options of ultrasound or biopsy fell below the standards of the average radiologist, he also agreed that if Dr. Messer did not "have reasonable suspicion for the finding on the 1993 mammogram . . . [he] wouldn't expect Dr. Messer to do anything more than he did."[3] Dr. Messer testified that he excluded carcinoma and had no suspicions.

Moreover, and more important, as matter of law, in this case the question of informed consent cannot be separated from the question of negligence. Often the issues are separate. Thus, a

---

[2] A compression artifact, according to Dr. Messer, arises from the differing positions and differing degrees of compression of different technicians.

[3] By referring to the plaintiff's expert radiologist's testimony we do not imply "that a physician must disclose to his patient only such information as is customarily disclosed by physicians in similar circumstances." *Harnish v. Children's Hosp. Med. Center*, 387 Mass. at 156. The testimony was a commonsense observation by the radiologist which is consistent with the result we reach in this case.

method of treatment of high risk, but rendered in a non-negligent manner without informed consent of the patient, may result in liability. *Precourt* v. *Frederick*, 395 Mass. at 696. *Feeley* v. *Baer*, 424 Mass. 875, 877, 878 n.4 (1997). See *Burnet* v. *Spokane Ambulance*, 54 Wash. App. 162, 169 (1989), rev'd on other grounds, 131 Wash. 2d 484 (1997). Here, however, the gist of the plaintiff's medical negligence case is that Dr. Messer failed to read properly the 1993 mammogram and hence failed to perform an ultrasound. To submit the negligence claim to the jury, the plaintiff needed, and obtained, an expert radiologist whose opinion was that such failure was not consistent with "the standard of care and skill of the average member of the profession practicing the specialty" at the time of the alleged negligence. *Brune* v. *Belinkoff*, 354 Mass. 102, 109 (1968). *Brusard* v. *O'Toole*, 429 Mass. 597, 607 (1999).

As stated in *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. at 155-156, the basis for the requirement of a patient's informed consent is as follows:

> "[A] physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient . . . . The information a physician reasonably should possess is that information possessed by the average qualified physician or, in the case of a specialty, by the average qualified physician practicing that specialty. *Brune* v. *Belinkoff*, 354 Mass. 102, 109 (1968). . . . What the physician should know involves professional expertise and can ordinarily be proved only through the testimony of experts."

Thus, the first step in what has been described as a two-step process in determining materiality in informed consent cases, see *Precourt* v. *Frederick*, 395 Mass. at 695, citing *Smith* v. *Shannon*, 100 Wash. 2d 26, 33 (1983), is evidence from the expert as to "[w]hat the physician should know."[4] *Harnish, supra* at 156. Thus, for the jury to find that Dr. Messer had not

---

[4]The second step is "the extent to which [the physician] must share that information with his patient." *Harnish, supra* at 150. That second question depends upon what information he should reasonably recognize is material to

complied with his duty of informed consent, they would first have to find substantially the same facts as they would have to find in order to determine him negligent — that he failed to recognize on the mammogram what the average qualified radiologist should have recognized. See *Brune* v. *Belinkoff*, 354 Mass. at 109.

Courts elsewhere have declined to allow an action for failure to inform based on the same facts necessary to establish negligence for failure to diagnose.[5] In Washington, where, by statute, the law of informed consent is substantially the same as the common law rule set forth in *Harnish*, the courts have not permitted such an action. In *Backlund* v. *University of Wash.*, 137 Wash. 2d 651, 661 n.2 (1999), the court pointed out:

> "Where a physician arguably misdiagnoses the patient's condition and recommends a course of treatment for the patient based on that misdiagnosis, the physician is properly liable in negligence for the misdiagnosis if such diagnosis breaches the standard of care. But the physician should not be additionally liable under RCW 7.70.050 [the informed consent statute] for a condition unknown to the physician. For example, a physician who misdiagnosed a headache as a transitory problem and failed to detect a brain tumor may be guilty of negligence for the misdiagnosis, but it seems anomalous to hold the physician culpable under RCW 7.70.050 for failing to secure the patient's informed consent for treatment for the undetected tumor."

The *Backlund* court cited with approval *Bays* v. *St. Luke's Hosp.*, 63 Wash. App. 876, 883 (1992), in which the Court of Appeals declined to create a second cause of action of informed consent predicated on the same facts required for negligence for a failure to diagnose a thromboembolism. The Court of Appeals stated that "the duty to disclose does not arise until the physician becomes aware of the condition by diagnosing it." *Id.* at 881.

---

the plaintiff's decision. "The materiality determination is one that lay persons are qualified to make without the aid of an expert." *Ibid.*

[5]The result we reach is not precluded by *Feeley* v. *Baer*, 424 Mass. at 875, 877-878 & n.4, or by *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. at 156-157. See also *Feeley* v. *Baer*, 41 Mass. App. Ct. 239, 244 (1996), reversed on other grounds, 424 Mass. at 876.

The New Jersey appellate courts have ruled to the same effect. See *Eagel* v. *Newman*, 325 N.J. Super. 467, 475 (App. Div. 1999); *Farina* v. *Kraus*, 333 N.J. Super. 165, 178-179 (App. Div. 1999); *Linquito* v. *Siegel*, 370 N.J. Super. 21, 33 (App. Div. 2004) (informed consent doctrine does not apply where physician makes improper diagnosis that there is no cancer; he cannot be expected to give patient information necessary to determine whether additional diagnostic testing should be conducted). See also *Brown* v. *Armstrong*, 713 S.W.2d 725, 727 (Tex. Ct. App. 1986) (failure to diagnose tubal pregnancy constitutes negligence but no cause of action based on theory of informed consent); 3 Louisell and Williams, Medical Malpractice § 22.04 (2004). Cf. *Pratt* v. *University of Minn. Affiliated Hosp. & Clinics*, 414 N.W.2d 399, 402 (Minn. 1987) (principles of informed consent do not require informing patient that diagnosis may be incorrect). But see *Marsingill* v. *O'Malley*, 58 P.3d 495, 504-505 (Alaska 2002).

We consider persuasive the cases precluding an additional claim based on a theory of informed consent in circumstances similar to those here. The crux of the plaintiff's claim was Dr. Messer's failure properly to diagnose and to recognize the need for further tests. That failure gives rise to a claim for negligence but not to a claim on principles of informed consent.

Accordingly, the judge was correct in refusing to charge on informed consent.

*Judgment affirmed.*