NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-310

STEPHEN G. MCDONOUGH, personal representative,[1]

vs.

SAYUJ PAUDEL & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This is a wrongful death action brought by the plaintiff, Stephen McDonough, as personal representative of the estate of Nancy McDonough, against Sayuj Paudel, M.D., and his employer, Massachusetts Acute Care Specialists, P.C.[3] The plaintiff alleged, among other things, that the defendants had been

---

[1] Of the estate of Nancy McDonough.

[2] Massachusetts Acute Care Specialists, P.C.; additional defendants, Michael Cohen, Salis Midha, and Salis K. Midha M.D., P.C., were dismissed by stipulation of the parties prior to trial.

[3] There was a stipulation that the defendant employer would be vicariously liable in the event of a finding adverse to the defendant, Dr. Paudel. Therefore, the jury were not asked to determine separately the liability of the employer.

negligent and that they had failed to obtain informed consent to treatment from the decedent.

After a jury trial, the jury found that Dr. Paudel was negligent in his care of the decedent, that he had failed to obtain her informed consent to treatment, and that both of these were causes of her death. Accordingly, the jury awarded damages for wrongful death in the amount of $3,400,000. The judge added twelve percent prejudgment interest, see G. L. c. 229, § 11; G. L. c. 231, § 6B, in the amount of $3,227,161, and entered judgment in the combined amount of $6,627,161. The defendants have now appealed.[4] For the reasons described below, we affirm.

1. <u>The jury instruction relating to the proper standard of causation</u>. The judge instructed the jury based upon the model jury instructions in relevant part as follows:

> "You must ask would Nancy McDonough's death have happened without defendant's negligence. The defendant caused Nancy's death if the death would not have occurred absent, that is, but for[,] the defendant's negligence. If the defendant's negligence had an impact on plaintiff's death, then it caused that death. But if the negligence had no impact on plaintiff's death and the same harm would have happened anyway, then the defendant did not cause Nancy McDonough's death."

---

[4] The defendants also appealed from the denial of their postjudgment motion for judgment notwithstanding the verdict, to set aside the verdict, to order a new trial, and/or to amend the judgment.

2

Although this is the focus of the defendant's concern, there was a portion of the judge's instructions immediately following, which we quote for completeness's sake.

"Often an injury or harm has more than one cause. If defendant's negligence was one of those causes, that is enough. Plaintiff does not have to show that defendant's negligence was the only cause of Nancy McDonough's death, nor does plaintiff have to show that the negligence was the largest or main cause of Nancy's death[,] as long as the death would not have occurred without the defendant's negligence."

After deliberations commenced, the jury came back with one question. In its entirety, it read:

"We are requesting clarification of causation. Regarding the instructions of causation on pg. 7 & 8[.] [sic.] There seems to be contradicting statements/questions for us to answer.

"For [e]xample:

"- pg 7 - 'The Defendant caused Nancy's death if the death would not have occurred absent, that is, but for, the Defendant's negligence.'

"This seems to contradict the following sentence:

"'If a defendant[']s negligence had an impact on plaintiff's death, then it caused that death.'

"How should we reconcile these seemingly conflicting instructions?"

After discussion with counsel, the judge provided the following response to the jury's question:

"Thank you for your question.

3

"I appreciate that you perceive a conflict in the 'causation' instructions, but I do not believe there is an actual conflict.

"Please read all the instructions, each sentence -- each, sentence, each paragraph -- together, and apply all the principles as you determine whether the alleged negligence in this case caused Mrs. McDonough's death.

"The second paragraph at the bottom of page 7 (beginning 'you must ask') identifies the requirement of 'but for' causation. The next paragraph at top of page 8 (beginning 'Often, an injury or harm . . .') explains that there may be more than one 'but for' cause of an injury. You should apply both those concepts, and follow all the causation instructions, considered together."

The defendants now argue on appeal that the use of the word "impact" in the middle of the first paragraph in the judge's earlier quoted instructions suggests that "'less than' true but-for causation" may be a basis for a finding of liability. They argue that with the added use of the word "impact," a jury might conclude that negligence having some effect or impression, such as making the harm more likely, could support a finding of liability. They also argue that the way the instruction is written, it may suggest that the jury could find liability regardless of "but for causation" unless the negligence had no impact at all on the situation.

This case is controlled by the Supreme Judicial Court's decision earlier this year, during the pendency of this appeal, in Luppold v. Hanlon, 495 Mass. 148 (2025). In that case, the court upheld almost this exact instruction against an identical

4

challenge.  Id. at 158-162.  It concluded that the instruction articulates the fundamentally correct legal principle of "but for" causation and forecloses the arguments raised by the defendants here.  Id.

In this case, of course, there may have been some juror confusion as indicated by the jury question.  The judge's answer to that question, to which there was no objection, was adequate to clarify that regardless of the jury's understanding of the instruction as given, the entire passage was about "but for causation," which, the judge conveyed, would be clear to the jury with careful examination of its text.  There was, therefore, no error in the instruction or the answer to the jury question.

2.  Denial of a directed verdict.  The defendants argue also that the judge erroneously denied their motions for a directed verdict on the claim of informed consent.  The defendants' claim that this case is like Roukonakis v. Messer, 63 Mass. App. Ct. 482, 484 (2005), where a claim of informed consent was not permitted to go forward because "the question of informed consent [could not] be separated from the question of negligence."  In that case, the negligence claim was based on the doctor's failure to properly read a mammogram, detect a potentially cancerous abnormality, and pursue further testing,

and the informed consent claim was also based on his failure to properly read the mammogram and disclose to the plaintiff the fact that she had a potentially cancerous abnormality. Id. at 482-486. The panel, therefore, concluded that these two claims required the jury to find "substantially the same facts" and that, where the plaintiff claims the doctor "fail[ed] to diagnose and to recognize the need for further tests," such a failure "gives rise to a claim for negligence but not to a claim on principles of informed consent." Id. at 485-486, 487.

Unlike that case, however, the informed consent claim here did not require the jury to find that Dr. Paudel should have disclosed something that he did not know because of his own negligence; he testified that he was aware of the need to give patients with atrial fibrillation, like the decedent, anticoagulants. Instead, the informed consent claim here involved a factual dispute about whether, when Dr. Paudel decided to take the decedent off the prescription medicine Lovenox, the anticoagulant she had been receiving, due to concerns about her kidneys, he told the decedent about a specific alternative treatment -- IV heparin -- and whether the decedent, having been informed of its availability and all other material information, declined such treatment. The facts the jury needed to find to find Dr. Paudel liable for failing to

6

obtain informed consent were different than those they needed to find to find him negligent; Roukonakis, supra, therefore, is inapplicable.

3. Cross-examination. The defendants argue that the judge improperly denied cross-examination of the plaintiff's expert with the trial testimony of a prior witness, the patient's treating nephrologist. The defendants' argument, however, relies on the premise that the nephrologist testified that, due to the decedent's severely reduced kidney function, adequate Lovenox remained in her body to anticoagulate her, notwithstanding the failure of Dr. Paudel to prescribe the proper anticoagulatory dose of IV heparin.

Even leaving aside the fact that the decedent did have a stroke, indicating inadequate anticoagulation, the nephrologist did not testify as the defendants would have it. He stated only that the Lovenox that had previously been administered to the decedent "most probably" remained in her system after her providers discontinued it because of her kidney issues; he offered no opinion as to how much Lovenox remained in her system, how long it would have remained, or whether this residual Lovenox would have been enough to effectively anticoagulate her. Therefore, there was no abuse of discretion

7

or other error in not permitting the cross-examination sought by the defendants.

4. <u>Defendants' causation expert</u>. The defendants argue that the judge erred in excluding testimony by their causation expert, Joseph Weinstein, M.D., that he believed that IV heparin should not have been given to the decedent for three reasons.

On cross-examination, Dr. Weinstein was asked if he agreed that IV heparin was an alternative method of preventing blood clots from forming in the decedent's heart after Lovenox had been discontinued. Dr. Weinstein began to explain why he thought administering IV heparin would not have been appropriate in the circumstances, but the plaintiff's counsel interrupted him, indicating that this was not responsive to the question he had asked. The defendant's counsel asked that Dr. Weinstein be allowed to finish his answer. The judge ruled that, given what he had been asked, Dr. Weinstein would not be allowed to explain why he thought IV heparin was inappropriate at that time, but that the defendant's counsel could cover this on redirect examination. The plaintiff's counsel moved on from this topic, however, so Dr. Weinstein never answered whether IV heparin was an alternative way to prevent blood clots from forming in the decedent's heart. On redirect, when the defendant's counsel tried to ask Dr. Weinstein why he thought administering IV

heparin would have been inappropriate, the plaintiff's counsel objected, arguing that this opinion had not been previously disclosed and that he had not opened the door to this testimony. The judge then conducted a voir dire during which Dr. Weinstein testified that he did not think the decedent should have been given IV heparin for three reasons: (1) at the time, the decedent had both kidney failure and abnormal liver function, and heparin is metabolized by the liver; (2) the decedent needed a cardiology procedure, and she needed to be off anticoagulation to undergo this procedure; and (3) the decedent had declined IV heparin when it was offered.  After hearing this proposed testimony, the judge decided to exclude it, finding that the first reason had not been disclosed and that the second and third reasons had already been covered in prior testimony.

Given that Dr. Weinstein did not testify on cross-examination that IV heparin would have been an alternative way of preventing blood clots from forming in the decedent's heart, the plaintiff's counsel did not open the door to Dr. Weinstein's opinion about why IV heparin would have nonetheless been inappropriate in these circumstances.  Accordingly, there was no error in the judge's decision to exclude this testimony.[5]

_____

[5] The defendants also argue that Nancy McDonough was well aware of the risk of stroke while off anticoagulation medication, and that therefore, as a matter of law, the claim of

9

5.  Prejudgment interest.  Finally, the defendants argue that the award of statutory prejudgment interest should be tolled because the trial was delayed due to the COVID-19 pandemic (COVID).

Prejudgment interest is statutorily mandated, see G. L. c. 229, § 11, and there is no support for the suggestion that it should be tolled by any aspect of the delay caused to some trials by the emergency orders issued during the pandemic.  Nor is there any basis for such tolling since prejudgment interest is designed to compensate the plaintiff for the time during which the defendant had possession of the money that was due the plaintiff and was able himself to earn interest on that money.  See Greene v. Phillip Morris USA Inc., 491 Mass. 866, 881 (2023).  Delay for any reason simply extends that time.[6]

---

lack of informed consent fails.  A patient's general knowledge about the risks of the absence of adequate anticoagulation is not "sufficient information to enable the patient to make an informed judgment" about her treatment, Harnish v. Children's Hosp. Med. Ctr., 387 Mass. 152, 155 (1982), therefore Dr. Paudel still had a duty to disclose "information about that risk that he reasonably should have recognized [the decedent] would consider important."  Precourt v. Frederick, 395 Mass. 689, 694 (1985).

[6] Of course, the statutory interest is fixed at twelve percent, see G. L. c. 231, § 6B, which is higher than currently available interest rates.  See, e.g., Board of Governors of the Fed. Rsrv. Sys., Selected Interest Rates (Daily) - H.15, https://www.federalreserve.gov/releases/h15/.  The defendants raise no claim based on that discrepancy, a claim, which is in any event, foreclosed by Greene, 491 Mass. at 884-885.

10

In any event, this is not an appropriate case even to raise the defendant's claim, as there is no evidence that any of the delay in this case was attributable to the Supreme Judicial Court's emergency COVID orders. Before the pandemic started, the trial date had already been set for almost two years later, on September 20, 2021. The delay until then was obviously not caused by the pandemic. And, by the time that date was continued to January 8, 2024, there were no longer any COVID-related restrictions on jury trials in effect. See Seventh Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, No. OE-144 (July 1, 2021), https://www.mass.gov/doc/repealed-sjc-seventh-updated-order-regarding-court-operations-under-the-exigent-circumstances-created-by-the-covid-19-coronavirus-pandemic/download.

There is no evidence in the record why the judge continued the case until January, 2024. The defendants, therefore, have pointed to no evidence that COVID had anything to do with the further extension.[7]

---

[7] The defendants' postjudgment motion speculates that the further continuance may have been due to the reduced availability of jurors in the aftermath of the pandemic, but there is nothing in the record to support this theory. Rather, the motion indicates, in a footnote, that scheduling conflicts of counsel may have played a role.

11

In the absence of any evidence that delay in this case was caused by the pandemic or the pandemic-related orders, even if prejudgment interest were to be tolled for either of those reasons, the defendants have not shown that they would be entitled to the benefit of any such tolling.

Judgment affirmed.

Order entered February 28, 2024, denying motion for postjudgment relief affirmed.


By the Court (Rubin, Henry & Walsh, JJ.[8]),

Clerk

Entered:  July 29, 2025.

---

[8] The panelists are listed in order of seniority.