## MARGARET A. MUELLER *v.* ISIDORE TEPLER ET AL.
## (AC 32489)

Lavine, Bear and Schaller, Js.

---

Argued September 16—officially released December 27, 2011

*Sean K. McElligott,* with whom, on the brief, was *Joshua D. Koskoff,* for the appellant (plaintiff Charlotte Stacey).

*Eric J. Stockman,* with whom, on the brief, was *Simon I. Allentuch,* for the appellees (defendant Iris Wertheim et al.).

SCHALLER, J. The plaintiff Charlotte Stacey[1] appeals from the judgment of the trial court rendered in favor of the defendants, Iris Wertheim, a gynecologic oncologist and surgeon, and Iris Wertheim, M.D., LLC,[2] following the granting of a motion to strike counts six and eight of the third amended complaint. The plaintiff claims that the trial court erred in concluding that the allegations regarding her relationship with Margaret A. Mueller, her same sex domestic partner, were insufficient to support a claim for loss of consortium. We affirm the judgment of the trial court.

The plaintiff alleged the following facts in her third amended complaint. In August, 2001, Mueller was referred to Wertheim after testing by her gynecologist indicated that she had cancer. In October, 2001, Wertheim performed surgery to remove several cancerous tumors from Mueller. These tumors were examined by a pathologist, who identified the cancer as pseudomyxoma peritonei, a cancer of the appendix. Wertheim either failed to review the pathology report or misinterpreted its findings. As a result of this negligence, Mueller was mistakenly diagnosed with ovarian cancer. Mueller remained under the care of Wertheim until March 5, 2004. Although the error was discovered in April, 2005, Mueller's cancer had progressed to a stage where some of the tumors no longer could be removed surgically.

---

[1] The original complaint contained only allegations of medical malpractice by the named plaintiff, Margaret A. Mueller. The complaint subsequently was amended to include a loss of consortium claim by Stacey. Because the issues on appeal pertain solely to Stacey's claims of loss of consortium, we refer to her as the plaintiff hereinafter.

[2] Although Isidore Tepler and Hematology Oncology, P.C., initially were named as defendants in the underlying action, the record indicates that the claims against them subsequently were settled. Because the issues on appeal do not relate to these parties, all references to the defendants hereinafter are limited to Iris Wertheim and Iris Wertheim, M.D., LLC.

On January 10, 2006, Mueller commenced the present action against the defendants seeking recovery for medical malpractice.[3] The third amended complaint, dated November 19, 2007, alleges, in relevant part, that the defendants are liable to the plaintiff for loss of consortium.[4] In support of these claims, the amended complaint contains the following allegations regarding the plaintiff's relationship with Mueller: (1) "At all times since June, 1985, [the plaintiff and Mueller] have been domestic partners and have lived together as partners for the past twenty-one years"; (2) "On or about November 12, 2005, [the plaintiff and Mueller] were joined in a civil union under Connecticut's civil union statute"; and (3) "Since 1985, [the plaintiff and Mueller] . . . have supported each other both financially and emotionally." Significantly, the complaint does not allege that the plaintiff and Mueller would have formalized their relationship before March 5, 2004, the date Mueller left the defendants' care, had they had been allowed to do so under state law.

On December 6, 2007, the defendants filed a motion to strike the plaintiff's loss of consortium claims. In this motion, the defendants argued that the plaintiff and Mueller "had not entered into a legal civil union/marriage prior to or during the dates of the alleged negligent acts [and therefore the plaintiff] cannot recover for loss of consortium . . . ." The plaintiff filed an objection to this motion on December 14, 2007. In support of this objection, the plaintiff argued that "because civil unions were unavailable at the time . . . Mueller was injured, [the plaintiff] states a valid claim for loss of consortium against [the] defendants."[5]

---

[3] Mueller died on January 10, 2009. On April 13, 2009, the trial court granted a motion substituting the executrix of the estate as a plaintiff.

[4] These claims are set forth in counts six and eight of the third amended complaint. Count six is directed against Iris Wertheim. Count eight is directed against Iris Wertheim, M.D., LLC.

[5] We note that the law first afforded the plaintiff the ability to formalize her relationship with Mueller in 2005, under our civil union law. See General

On February 11, 2008, the trial court granted the defendants' motion to strike, stating: "I simply feel that the defendants are quite correct in pointing out that a consortium claim is not sustainable by people who are not either in a legal marriage or in a legal civil union at the time of the wrong."[6] On July 28, 2008, the defendants filed a motion seeking judgment on those counts pursuant to Practice Book § 10-44.[7] The motion was granted by the court on August 20, 2008. The plaintiff filed a notice of intention to appeal this judgment pursuant to Practice Book § 61-5 on August 29, 2008. On July 2, 2010, the jury returned a verdict in favor of Mueller's estate on the claims of medical malpractice. The plaintiff filed the present appeal on July 22, 2010.

On appeal, the plaintiff claims that the trial court improperly granted the defendants' motion to strike her claims for loss of consortium. Specifically, she argues that counts six and eight of the third amended complaint state valid claims for loss of spousal consortium because, although she was not married to Mueller before the defendants' negligent actions occurred, she and Mueller would have formalized their relationship, but for the unconstitutional deprivation of their right to do so under the provisions of state law existing at that time. We conclude that the plaintiff's argument fails because she did not allege this additional fact in her third amended complaint.

Statutes (Sup. 2006) §§ 46b-38aa through 46b-38oo; see also *Kerrigan* v. *Commissioner of Public Health*, 289 Conn. 135, 148, 957 A.2d 407 (2008). The third amended complaint alleges that the defendants ceased caring for Mueller on March 5, 2004. The effective date of the civil union statute was October 1, 2005. Public Acts 2005, No. 05-10, § 1.

[6] The court also struck counts two and four of the third amended complaint. These counts contained the plaintiff's loss of consortium claims against Isidore Tepler and Hematology Oncology, P.C. Because these defendants are not parties to the present appeal; see footnote 2 of this opinion; these counts are not at issue.

[7] The plaintiff did not replead counts six and eight after the motion to strike was granted. See Practice Book § 10-44.

We begin our analysis by setting forth the relevant standard of review. "In an appeal from a judgment granting a motion to strike, we operate in accordance with well established rules. . . . A motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court. As a result, our review of the [trial] court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly . . . rather than narrowly. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 129–30, 2 A.3d 859 (2010).

Loss of spousal consortium was first recognized as a viable cause of action under this state's law in *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 493, 408 A.2d 260 (1979). In that case, our Supreme Court overruled *Marri* v. *Stamford Street R. Co.*, 84 Conn. 9, 78 A. 582 (1911), and held that "either spouse has a claim for loss of consortium shown to arise from a personal injury to the other spouse caused by the negligence of a third person . . . ." *Hopson* v. *St. Mary's Hospital*, supra, 496. In reaching this conclusion, our Supreme Court defined the concept of "consortium" as "the services of the wife, the financial support of the husband, and the variety of intangible relations which exist between spouses living together in marriage." Id., 487.

In *Gurliacci* v. *Mayer*, 218 Conn. 531, 564, 590 A.2d 914 (1991), our Supreme Court held that a claim for

loss of spousal consortium cannot be maintained when the plaintiff was not married to the victim at the time the underlying tort occurred. In that case, Louis Gurliacci, sought recovery for loss of consortium after his then fiancée, Debra Gurliacci, was injured in an automobile accident caused by the negligence of another driver. Id., 534, 561. At the time of the accident, the two were engaged and cohabiting. Id., 561. Louis Gurliacci argued that "a person who is not married to the victim of the tort at the time of the injury may, upon marriage, bring a claim for loss of consortium." Id., 563. Our Supreme Court disagreed, stating: "the formal marriage relation forms the necessary touchstone to determine the strength of commitment between the two individuals which gives rise to the existence of consortium between them in the first instance. . . . [A] cause of action for loss of consortium does not exist where the injury occurred prior to the marriage of the parties." (Citation omitted; internal quotation marks omitted.) Id., 564.

The plaintiff argues that departure from the rule set forth in *Gurliacci* is appropriate under the facts of the present case because she would have been married to Mueller at the time of the underlying tort but for the unconstitutional deprivation of her right to do so. See *Kerrigan* v. *Commissioner of Public Health*, 289 Conn. 135, 149, 957 A.2d 407 (2008). Even if we were to assume that a complaint that includes such an allegation states a legally sufficient claim for loss of consortium, the plaintiff did not plead this fact in the third amended complaint. Although the plaintiff pleaded that she was in a stable relationship with Mueller, lived with her for many years, supported her financially and entered into a civil union with her one and one-half years after the tortious conduct had occurred, these allegations, even when construed in the light most favorable to the plaintiff, do not allege that the couple would have formalized their relationship before the defendants' negligent acts

ceased on March 5, 2004. Absent such an allegation, the plaintiff's claim is functionally equivalent to that presented in *Gurliacci*.[8] Accordingly, we conclude that the trial court did not err in granting the defendants' motion to strike the sixth and eighth counts of the third amended complaint.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

[8] Although not reached in the present case, we note that the merits of this issue were addressed by the Massachusetts Supreme Judicial Court in *Charron* v. *Amaral*, 451 Mass. 767, 889 N.E.2d 946 (2008). In that case, the court concluded that its recognition of same sex marriage in *Goodridge* v. *Dept. of Public Health*, 440 Mass. 309, 798 N.E.2d 941 (2003), was not to be applied retroactively and, accordingly, affirmed the trial court's award of summary judgment to the defendants on the plaintiff's loss of consortium claim. *Charron* v. *Amaral*, supra, 773. In reaching this decision, the court stated that affording marital rights to same sex couples retroactively in this context "could open numbers of cases in all areas of law to the same argument." Id. Indeed, as noted by Chief Justice Marshall in her concurrence: "[T]he relief the plaintiff seeks—recognition of a loss of consortium claim nunc pro tunc—would erase the bright line between civil marriage and other forms of relationship that has heretofore been carefully preserved by the [l]egislature and our prior decisions . . . . Granting such relief would create in effect a common-law or de facto quasi marital status that would promote litigation, permit judges to select from among marital benefits to which quasi marital couples might or might not be entitled, create uncertainty in the private as well as the public sphere about who is (or was) quasi married and for what purpose, and undercut the [l]egislature's role in defining the qualifications and characteristics of civil marriage." Id., 775–76.

[9] This conclusion also forecloses the plaintiff's argument that the trial court's decision to grant the defendants' motion to strike violated her right under the equal protection guarantees of the Connecticut constitution. Because the plaintiff's allegations are identical to those set forth by the heterosexual plaintiff in *Gurliacci* and because the disposition of these cases is the same, the plaintiff is unable to demonstrate that she was treated differently because of her sexual orientation. See *Brooks* v. *Sweeney*, 299 Conn. 196, 219, 9 A.3d 347 (2010) ("[t]he requirement imposed [on] [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances [in which] persons situated similarly in all *relevant* aspects were treated differently" [emphasis in original; internal quotation marks omitted]). Neither Louis Gurliacci nor the plaintiff here alleged that they were married to the respective injured party at the time of the alleged negligent act.